JOSEPH FREDMAN v. CONSOLIDATED FIRE & MARINE INSURANCE COMPANY.[1]

April 24, 1908.

Nos. 15,489—(203).[2]

**Insurance Broker.**

B., a duly licensed insurance broker, engaged in business as such, applied to F. for the renewal of an existing fire insurance policy on a stock of liquors. F. declined to have the policy renewed. It was agreed between B. and F. that B. should procure for F. a policy for the same amount as the existing policy, but on the furniture in F.'s restaurant. B. notified the regularly commissioned agents of the insurance company that the old policy would be renewed. A renewal policy was then written on the stock of liquors, so entered on the books of the company, and delivered to B. for delivery to F. B. did not inform the agents of the com-

1 Reported in 116 N. W. 221.          2 October, 1907, term calendar.

pany of the agreement between him and F. The policy was delivered to F., who retained it for several months; and until after a fire had destroyed the furniture he was not aware that the policy in his possession did not cover the furniture. In an action to reform the policy, so as to make it cover the property destroyed by the fire, and to recover thereon, *held* that:

(a) The broker was not the agent of the insurance company, for the purpose of making a contract of insurance or an agreement to insure, and that there was therefore no mutual mistake which would authorize the reformation of the contract of insurance.

(b) An insurance broker, under the statute, is the representative of the insured, and not the agent of the insurance company, except for the purpose of collecting or securing the premiums, and an agency in fact cannot be inferred from acts and conduct entirely consistent with his position as a broker.

(c) R. L. 1905, § 1642, must be construed in connection with section 1716, which declares the extent of the agency of an insurance broker. It does not enlarge the authority of a broker to represent the insurance company as defined in section 1716.

Action in the district court for Ramsey county to have an insurance policy reformed and to recover upon it as reformed the sum of one thousand dollars. The case was tried before Orr, J., who made findings and ordered judgment in favor of plaintiff for the sum demanded. Defendant's motion to amend the findings was granted in part and denied in part. From the judgment entered pursuant to the order for judgment, defendant appealed. Reversed.

*Dunn & Carlson,* for appellant.

*Markham & Calmenson,* for respondent.

ELLIOTT, J.

This was an action to reform a policy of fire insurance and to recover thereon as reformed. The trial court found in favor of the plaintiff on all the issues, and the defendant appealed from the judgment.

For some time prior to 1906 the Consolidated Fire & Marine Insurance Company had been engaged in business in the state of Minnesota, and was represented at St. Paul by Warner & Regensdorf as its duly appointed and commissioned agents, with authority to fix premiums, receive money, countersign, approve, and issue policies, and gen-

erally represent the company. Joseph Bergfeld was an insurance brok--
er, duly licensed as such by the insurance department of the state of
Minnesota, and for several years had been engaged in business as a
broker in the city of St. Paul. He never was a commissioned agent
of the appellant, but was known by its agents at St. Paul as being en-
gaged in the insurance brokerage business. On July 12, 1906, Berg-
feld applied to the plaintiff, Fredman, for leave to renew and continue-
for another year a policy of insurance theretofore issued and delivered
to the plaintiff by the defendant. That policy covered a stock of wines,
liquors, cigars, and other merchandise. Fredman declined to renew the
existing policy on the wines, liquors, and cigars, and told Bergfeld that
he then had all the insurance he wished to carry on that property, and
that he had recently reduced the amount of his insurance. Bergfeld
expressed the hope that he would not be left out and that his policy
would not be dropped. Fredman told him that he might place a policy
for the same amount on the restaurant and hotel fixtures and furniture.
To this Bergfeld assented, and agreed with the plaintiff that the policy
should be so written. Bergfeld then went to the office of Warner &
Regensdorf, and informed them that the policy would be renewed, but
did not inform them of the agreement with reference to the transfer of
the policy from the wines, liquors, and cigars to the restaurant furni--
ture and fixtures. Warner & Regensdorf thereupon prepared a new
policy, entered it upon their daily report to the company in conformi-
ty to the policy as actually issued, and gave it to Bergfeld for delivery
to Fredman. Bergfeld, before delivering it, entered it in his own rec-
ords as covering the property actually described in the policy.

It thus appears that the agents of the company issued the policy
they intended to issue, and that they had no knowledge of any desire-
on the part of Fredman to do other than renew the policy on the wines,
cigars, and liquors. Bergfeld's conduct in entering the policy in his-
own records seems inconsistent with an understanding that it was
not in fact issued as desired by Fredman; but the court found that by
the mutual mistake of the parties the policy as issued did not express
the true agreement and understanding of the parties thereto, in that
it did not cover and insure the property which the parties intended
should be covered and insured thereby, but covered and insured other
property not intended to be covered and insured thereunder. The-

agreement, which the court orders made binding on the company, is the agreement between Bergfeld and Fredman; and it is admitted that the regularly appointed agents of the company at St. Paul knew nothing of any such agreement when they issued and delivered the policy, or until after the fire, more than three months thereafter. The effect is to hold that Bergfeld was the agent of the insurance company for the purpose of binding it by his agreement to insure the furniture and fixtures in the restaurant. When Bergfeld delivered the policy to Fredman, the latter placed it in his safe without examination, and did not know that an error or mistake had been made with reference to the property covered until the day after the fire, which occurred on September 5; 1906. Due proof of loss was made, and, payment being refused, this action was commenced; and the court found the facts in substance as stated, from which the conclusions of law were drawn that Bergfeld was the agent of the insurance company, that the policy should be reformed as prayed, and judgment entered thereon in favor of the plaintiff for the full amount claimed.

The assignments of error raise many questions upon the refusal of the court to make additional or modified findings of fact; but we do not find it necessary to consider them, as the judgment must be reversed if the court was in error in holding that Bergfeld was the agent of the company and that the agreement with him, although not communicated to Warner & Regensdorf, laid the foundation for a reformation of the policy on the ground of mutual mistake of the parties. The court did not find as a fact that Bergfeld was the agent of the insurance company, and the evidence would not have sustained such a finding. It did find, as a conclusion of law, that "in virtue of the laws of this state and upon the facts above found" he was such agent. . We think that this conclusion resulted from an erroneous construction of the statute.

Whatever was done by Bergfeld in connection with the issuance of this policy must be interpreted in the light of the admitted fact that he was an insurance broker and engaged in business as such. Necessarily a broker solicits insurance. We cannot disregard the fact that he was a broker, and then give to what was done by him a construction which it might possibly bear if he had not been a broker; that is, if he had been an agent acting under some kind of actual authority from

the insurance company. Both Fredman and the insurance company must be taken to have known that the laws of the state recognized and provided for insurance brokers, as well as insurance agents. We find nothing in the record which tends to show that Bergfeld ever assumed to act as the agent of the insurance company, or of its duly commissioned agents, Warner & Regensdorf, in any way inconsistent with his status as a broker. There is nothing to suggest that Fredman understood that Bergfeld had any actual authority to represent the insurance company, or that he did anything with the consent or knowledge of the insurance company which would estop it from questioning his authority to bind the company. Everything that Bergfeld did in connection with the issuance of this policy was consistent with his character as a broker; that is, of one who acts as a middleman between the insured and the insurer, and who solicits insurance from the public under no employment from any particular company. Ordinarily, when a broker secures an application, he places the insurance with a company selected by the applicant, or, in the absence of such selection, with one selected by himself. He may receive his compensation from the insurance company or its agent under an arrangement for the division of the commission. R. L. 1905, § 1620, provides that "whosoever, not being the appointed agent or officer of the insuring company, for compensation acts for or in any manner aids another in effecting insurance or reinsurance, shall be deemed an insurance broker; but no person shall act as such except as hereinafter provided." The subsequent provision of the statute relates to the licensing of such brokers by the insurance commissioner of the state.

The well-understood distinction between insurance agents and insurance brokers is thus recognized by the statute. Unless otherwise provided, an insurance broker represents the insured, although he may represent either the insured or the insurer, or both, for certain purposes. It is a question of fact to be determined by the evidence. He may be the agent of the insurer for the purpose of delivering the policy and collecting the premiums, for the collection of the premiums only, or not even for that purpose. See Seamans v. Knapp-Stout & Co., 89 Wis. 171, 61 N. W. 757, 27 L. R. A. 362, 46 Am. St. 825; John R. Davis Co. v. Hartford, 95 Wis. 226, 70 N. W. 84, 37 L. R. A. 131; Indiana v. Hartwell, 123 Ind. 177, 24 N. E. 100; Newark v.

Sammons, 110 Ill. 166; Hermann v. Niagara, 100 N. Y. 411, 3 N. E. 341, 53 Am. 197; East Texas v. Blum, 76 Tex. 653, 13 S. W. 572; Davis v. Ætna, 67 N. H. 335, 39 Atl. 902; Pottsville v. Minnequa, 100 Pa. St. 137. An insurance company is bound by the knowledge of its agent; but it is not bound by the knowledge of a broker, unless such knowledge has been actually communicated to it. United Firemen's Ins. Co. v. Thomas, 92 Fed. 127, 34 C. C. A. 240, 47 L. R. A. 450; Devens v. Mechanics, 83 N. Y. 168; McFarland v. Peabody, 6 W. Va. 425; Fire Association v. Hogwood, 82 Va. 342, 4 S. E. 617; Ben Franklin v. Weary, 4 Brad. 79; Royal v. McCrea, 8 Lea (Tenn.) 531, 41 Am. 656; Bradley v. German-American, 90 Mo. App. 369; Fire Association v. American (Tex. Civ. App.) 84 S. W. 1115.

It was not always easy to determine who this go-between or middleman actually represented in a given transaction, and the disposition of the insurance companies to disclaim any responsibility for his acts induced the legislature to define his status. R. L. 1905, § 1716, provides that, "every insurance agent or broker who acts for another in negotiating a contract of insurance by an insurance company shall be held to be the company's agent for the purpose of collecting or securing the premiums therefor, whatever conditions or stipulations may be contained in the contract or policy." This section applies to agents, as well as brokers, and in so far as it refers to agents it does no more than declare the powers which they possess independent of the statute. A broker was generally held to represent the company for the purpose of collecting the premiums, but he probably had no power at common law to secure the payment of a premium; that is, he could not accept payment in anything but cash. But this statute gives the broker power to either collect or secure the premiums, and to this extent it enlarges his common-law powers. It is clear that the principal object which the legislature had in view was to make ineffective provisions which were often inserted in policies to the effect that the broker or soliciting agent should be regarded as the agent of the insured, although the fact might be quite otherwise. But the statute does not make the broker the agent of the company for any purpose other than the collection or securing of the premium, and the inference from this express provision is that the agency is limited to the enumerated purposes. This construction is in harmony with the general notion of the

104 M.—6

business of the broker. Except as thus declared, the powers of an insurance broker are not determined by the statute, but are left to be determined by contract between the parties, so long as the contract does not contravene the statutory provision.

Before the enactment of the statute, as said in Gude v. Exchange Fire Ins. Co., 53 Minn. 220, 54 N. W. 1117, the broker might be deemed the agent of the company for the delivery of the policy and the collection of the premium, and nothing more. Now he must be considered as the agent of the company for the purpose of collecting or securing the premiums. It was held in the Gude case that the broker was not the agent of the insurance company for the purpose of waiving a condition in the policy. How can it then be claimed that he is the agent of the company for the purpose of making a contract of insurance, or binding the company by a contract to insure?—particularly in view of the statute, which authorizes the company to insert in the standard form of fire policy the provision that "this policy shall not be valid until countersigned by the duly authorized agent of the company at ————." The legislature must have intended that this statement should be given force and effect, and its purpose must have been to enable an insurance company to prevent the making of binding contracts by unauthorized persons assuming to represent it. The idea it suggests is utterly at variance with the claim that an ordinary licensed insurance broker can bind the company by his agreement that it will insure any particular property.

Bergfeld was the agent of the insurance company for the purpose of collecting or securing the premium, but, by virtue of the statute, for no other purpose. His agreement to insure the restaurant furniture and fixtures was not binding upon the company until approved by its duly authorized agent. The result is that there was no mutual mistake, such as justifies a reformation of this policy. The company, acting through its proper agents, issued the policy which it intended to issue. Fredman did not get the policy which he expected to get. There is nothing to show that the company would have issued the policy which Fredman desired. The risk may have been greater. The premium may have been different. These are matters which the company was entitled to take into consideration before assuming the risk. It did in fact insure Fredman's stock of wines and liquors, and if it had been

destroyed the company would unquestionably have been liable for the loss. But the furniture in the restaurant was destroyed, and the respondent seeks to have the policy reformed, so as to cover property which the company never knew that it had insured, and rests his right upon the understanding with the broker. If this can be done, the writing of insurance is placed in the hands of brokers, who may impose any kind of liabilities they desire upon insurance companies by the simple expedient of making an agreement with the applicant and reporting a different agreement to the company to which they offer the insurance. The result would be that no insurance company would dare to deal with an insurance broker. The statute was never intended to bring about such a condition. It intended that agents selected by insurance companies under the sense of responsibilities for their acts should bind the companies within the apparent scope of their authority, and that such brokers as the insurance commissioner thought proper to license should act as brokers within the ordinary acceptation of the term, subject to the restrictions expressly provided for in the statute.

R. L. 1905, § 1642, provides that every person who solicits insurance and procures an application therefor shall be held to be the agent of the party afterwards issuing insurance thereon, or a renewal. This section must be construed with the provision in the same statute relating to brokers which we have been considering. This general provision does not increase or extend the powers of brokers as declared in the statute. It provides that every person who solicits insurance shall be the agent of the company which accepts the insurance, and prevents the company from requiring the insured to stipulate that the soliciting agent shall be regarded as the agent of the insured. It does not purport to define the scope of the agency thus declared. When the company accepts the benefit of the work of a soliciting agent, it cannot thereafter disclaim the agency of the solicitor in the doing of anything necessarily implied in the specific act thus authorized. Hankins v. Rockford, 70 Wis. 1, 35 N. W. 34; United Firemen's Ins. Co. v. Thomas, supra.

The judgment is therefore reversed.