## JACOB BUZALSKY and Others v. THEODORE BUZALSKY and Others.[1]

July 16, 1909.

Nos. 16,175—(86).

**New Trial — Issues in Equitable Action Submitted to Jury.**

> Where, in an equitable action, certain of the issues presented by the pleadings are submitted to a jury, and they return a verdict thereon, the defeated party may apply for a new trial of the issue or issues so submitted, without waiting for findings by the court upon the remaining issues. where the verdict is decisive of the case.

**New Trial — Evidence to Sustain Verdict.**

> Evidence *held* not so clearly in favor of the verdict as to justify the reversal

[1]Reported in 122 N. W. 322.

of an order granting a new trial on the ground that the evidence did not sustain it.

From an order of the probate court for Steele county allowing the will of Jacob Buzalsky, certain of his children appealed to the district court for that county. The case was heard before Buckham, J. At the close of the evidence the court submitted to the jury the following question: Was the execution of the instrument offered for probate as the last will and testament of Jacob Buzalsky, deceased, and offered in evidence on the trial of this action, procured by undue influence of Frances Buzalsky and Jacob Buzalsky, or either of them? The verdict of the jury was "yes" in answer to that question. Proponents' motion for judgment admitting the will to probate notwithstanding the verdict was denied, and their motion for a new trial was granted. From the order granting a new trial, Theodore Buzalsky, Christina Graboski and Mary Scheymanski appealed. Affirmed.

*F. A. Alexander* and *John Moonan,* for appellants.

*Leach & Reigard,* for respondents.

BROWN, J.

Jacob Buzalsky died in January, 1908, leaving what purported to be his last will and testament, which disposed of all property possessed by him at the time of his death. He settled in Steele county about the year 1880, with his wife and four children. One child subsequently died, so that three only of these children survived him. He brought with him and installed in his home, at the time of his location in Steele county, a woman, named Frances Jowitzky, by whom he had four other children, one of whom also died, and three survived at his death. His lawful wife died in May, 1904, and on June 14 of the same year he married the woman Frances, who survived him and is one of the beneficiaries under the will. As we understand the record, all children by this woman were born before the death of the lawful wife and while she was a member of deceased's household. At the time of his death deceased was the owner of a farm, consisting of one hundred sixty acres, equipped with farming utensils and live stock of the value of several thousand dollars,

and about $1,300 cash on deposit in one of the Owatonna banks. By his will he made ample provision for his widow, the second wife, gave to each of the children by the first wife $25, and the balance of his estate he divided between the children by the woman, Frances Jowitzky, with whom he intermarried, as already stated, after the death of his lawful wife, and after the birth of these children.

The will was duly presented to the probate court for allowance, and the children by the first wife, now full grown and married, interposed a contest and objected to its allowance on the grounds (1) that the instrument was not the last will of deceased; (2) that it was not executed as required by law; (3) if it was deceased's will, and properly executed, that its execution was procured by undue influence; and (4) that deceased was not at the time of sound and disposing mind. The probate court allowed the will, whereupon contestants appealed to the district court. In that court only two questions were raised: (1) Whether the will was properly executed; and (2) if so, whether its execution was procured by undue influence. The second question was submitted to a jury; the first being reserved for determination by the court. The jury found that the will was procured by undue influence, whereupon the proponents moved for a new trial on several grounds, among others that the verdict was not justified by the evidence. The motion was granted expressly upon the ground just mentioned. From this order contestants appealed to this court.

It is contended by appellants (1) that the motion for a new trial was premature, as it could not properly be made until after the court had disposed of the reserved question, viz., whether the will was in fact that of deceased, and findings of fact and conclusions of law had been made and filed; and (2) that the evidence conclusively shows that the will was procured by undue influence, and that it was error to set aside the verdict so finding.

1. There was no error in entertaining the motion for a new trial of the issue submitted to the jury before findings and order for judgment were made and filed. The verdict that the will was procured by undue influence completely disposed of the case adversely to the contestees, and the case was in precisely the situation of an ordinary action after verdict rendered. The court was bound by the

verdict and could not ignore it. Niggeler v. Maurin, 34 Minn. 118, 24 N. W. 369; Reider v. Walz, 93 Minn. 399, 101 N. W. 601. No further findings were necessary to a final judgment, and the motion for a new trial was properly made. In some of the states, under the old chancery practice, where the verdict in cases of this kind is merely advisory, and not conclusive upon the court, findings and order for judgment would be necessary before a new trial could be applied for; but under our statutes the verdict, unless set aside, is final, and may be proceeded against as in other actions. Such was the practice followed in Marvin v. Dutcher, 26 Minn. 391, 4 N. W. 685. We discover nothing in Meighen v. Strong, 6 Minn. 111 (177), 80 Am. Dec. 441, indicating irregularity in this practice.

2. The question whether the evidence is so far conclusive in favor of the verdict as to justify a reversal of the order granting a new trial requires no extended discussion. Motions for new trials on the ground that the verdict is not sustained by the evidence are addressed to the discretion of the trial court, to be interfered with by this court only when the decision of that court is clearly and palpably against the evidence. We have examined the evidence in this case with care, and, though we find some strong items tending to show the exercise of undue influence over deceased by his second wife, yet we cannot say that, taken as a whole, the evidence palpably sustains the verdict of the jury.

The learned trial judge had the witnesses before him, and was in better position to weigh the evidence, in connection with the circumstances shown, than members of this court with only the cold record before them. It appears—at least, there is evidence tending to show—that deceased in his lifetime made substantial provision for two of the children by his first wife, and that he in fact neglected only his daughter, who, it is claimed, married against his will. To her by his will he gave $25. But mere discrimination between children in the distribution of property by will is no ground for setting the will aside. Deceased was under natural obligations to the children by the second wife, whether born before or after his marriage to her, and the fact that he was partial to them furnishes no ground for invalidating his will. The case is wholly unlike Tyner v. Varien, 97 Minn. 181, 106 N. W. 898. There a second wife persuaded her weak-minded

husband to will all his property to her relatives, having no claim upon him, to the entire exclusion of his children. A conclusive case of gross undue influence was there made out. Not so, however, in the case at bar. The most that can be said in this case is that the evidence is sufficient to support the claim of undue influence, if approved by the trial court, but is far from conclusive.

Order affirmed.