## FIRST NATIONAL BANK OF LAKEFIELD v. ANTHONY S. QUEVLI AND OTHERS.[1]

January 9, 1931.

No. 27,685.

F. B. Kalash and E. H. Nicholas, for appellant.
B. E. Grottum and McCune & McCune, for respondents.

STONE, J.

Appeal by plaintiff from a judgment of dismissal in an action to foreclose a real estate mortgage.

The land is an 80 near Lakefield, in Jackson county, an outlying portion of a very much larger tract formerly owned by defendant Nels Quevli. The record title in 1917 was in his son, defendant Anthony S. Quevli, who on November 5 of that year conveyed the 80 to defendant Olaf Buckeye. At that point arises the first issue

[1]Reported in 234 N. W. 318.

of fact, it being the claim of plaintiff, denied by defendants Buckeye, that the conveyance was solely for the convenience of defendant Nels Quevli and to enable him to procure a $3,500 federal farm loan on the land, a thing that could not be accomplished without dividing up his large tract among several ostensible owners.

The next issue of fact arises on the claim of plaintiff, denied by defendants Buckeye, that concurrently with the conveyance to Olaf Buckeye, he executed and delivered to Nels Quevli a warranty deed, complete except that it lacked the name of the grantee; that the name of defendant Henry Buckeye was inserted as that of the grantee and the deed delivered to him. There is evidence for plaintiff, again denied by defendants Buckeye, that this deed was forwarded by mail to the register of deeds at Jackson for recording. But it was never recorded and if executed has disappeared. There is in the record a warranty deed under date of June 3, 1919, filed for record June 23, 1919, from defendant Henry J. Buckeye to defendant Anthony S. Quevli. It was subject to two mortgages—one for $3,500 to the Federal Land Bank of St. Paul, and the other, filed for record concurrently with the deed, for the foreclosure of which this action was brought. Defendant Henry J. Buckeye is the mortgagor and defendant Nels Quevli the mortgagee. The debt secured was $6,500, evidenced by notes as referred to in the mortgage, which contains the usual covenants. There is also in the record an executory contract for the sale of the land from Anthony S. Quevli to Henry J. Buckeye bearing date of June 3, 1919. The specified purchase price was $11,000, $1,000 of which was to be paid in money and the balance by the vendee's assumption of the same two mortgages, the second, which plaintiff now seeks to foreclose, having been assigned to plaintiff by the mortgagee.

The record shows a notice of cancelation of this contract, service of which was admitted by Henry J. Buckeye December 20, 1920. The cancelation appears to have become effective February 23, 1921. So, whatever the fact may have been, defendants Nels Quevli and Henry J. Buckeye in the early days of June, 1919, dealt with the land as though it was the property first of Buckeye and then of

Anthony S. Quevli. The record strongly suggests at least an effort to put the title in Henry J. Buckeye so that he could execute the mortgage in question, then deed back to Quevli and take in return the executory contract of sale just referred to.

There was submitted to a jury the special issue whether defendant Olaf Buckeye had "executed" the alleged deed in blank as to grantee, and the verdict answered it in the affirmative. The other questions were reserved for decision by the court, and findings were made and judgment ordered for defendants. The general conclusion was, notwithstanding the special verdict, that the deed had never been delivered; that the title was in defendant Olaf Buckeye; that defendant Henry J. Buckeye never had title; and so the mortgage in suit had never become a lien.

Just how the special issue was framed as it was does not appear. The jury were instructed that " 'execution,' as used in the question, means, so far as this case is concerned at least, the signing of a deed by the grantor, complete in all its provisions, filled out, excepting only the name of the grantee, signing the same before two witnesses, and the signature being acknowledged by a notary public. That would be the process of execution so far as this case is concerned." By that instruction, acquisced in by counsel, the case was removed from the operation of the rule that "the execution of a written instrument ordinarily includes its delivery." Cash v. Concordia F. Ins. Co. 111 Minn. 162, 165, 126 N. W. 524, 525.

While the issue submitted to the jury was not considered below to involve the question of delivery, it was submitted under general instructions which could not have been more appropriate if the jury had been asked to pass also upon that issue. That is, in addition to the very narrow question of the mere signing of the deed, the jury were instructed concerning the broad and "general claims of the plaintiff," which necessarily involved the alleged delivery of the deed and consequent passing of the title in such manner as to subject it to the lien of plaintiff's mortgage. The deed above referred to from Henry J. Buckeye to Anthony S. Quevli of June 3, 1919, the contract back and its cancelation, were expressly put before the jury as circumstances in support of the "general claims"

of plaintiff. On the other side, the equally broad claims of defendants Buckeye, particularly those of Olaf, were given the jury. They went as much to negative the delivery as the signing of the supposed deed. We cannot but feel that in view of the evidence and instructions the jury really passed upon, the whole issue of signing and delivery. The verdict never having been set aside, we feel constrained to hold that it was error to resolve the closely related issue of its delivery contrary to the plain implications of the verdict affirming the signing of the deed. In this state the verdict of a jury on a special issue is final and controlling and not merely advisory. In consequence, so far as an issue so submitted and determined is decisive, the verdict governs decision. Buzalsky v. Buzalsky, 108 Minn. 422, 122 N. W. 322, and cases cited.

The deed was signed, if at all, and delivered to Nels Quevli about November 5, 1917. If delivered to Henry J. Buckeye, it was done about June 3, 1919. So, as correctly claimed for defendants, the transaction was far from unitary as were the concurrent destruction of an old will and the execution of a new one, which were involved in Boynton v. Simmons, 166 Minn. 65, 207 N. W. 189. But from the standpoint of the evidence and the considerations which govern decision, the controlling issue, as distinguished from the transactions out of which it arose, was essentially a unit. The verdict on a special question must be given its full and proper effect or be set aside. It is not to be nullified by so halving what is really a single issue that although a jury may decide one-half the court may then decide the other half of it contrariwise in such fashion as to defeat the verdict. It is difficult to consider the evidence in this case without concluding that if the deed was ever signed by Olaf Buckeye it was certainly delivered to Nels Quevli, and later, after the name of defendant Henry J. Buckeye had been filled in as that of the grantee, delivered to him in connection with and after the record transfer of title necessary to support the mortgage which plaintiff now seeks to enforce. That is a short way of stating why we consider the issue so much a unit that it should not have been disposed of in the divided way already considered.

Both the mortgage and the notes securing it are found to have been without consideration. But if the title was put by Nels Quevli in Henry J. Buckeye, it was done for the purpose of giving the former the very notes and mortgage in question to enable him to obtain credit on the faith of them. In any event, by pledging them as collateral he secured a loan from plaintiff. He testifies that he told Henry Buckeye he wanted notes and mortgage for that purpose. In that view of the case, absence of consideration may not be material. There would remain the issue whether Nels Quevli and Henry J. Buckeye would be estopped to show lack of consideration. In any event plaintiff might recover on the notes as a holder for value (although not in due course) of accommodation paper.

We appreciate fully the argument made here on the facts. The findings for defendants have support in the evidence. But, with a verdict which may well be considered a decision of the whole controlling fact issue adverse to that reached by the learned trial judge, our conclusion is that the judgment be reversed and that there be a new trial.

So ordered.

LORING, J. took no part.

WILSON, C. J. (concurring in part and dissenting in part).

The form of submission to the jury was unusual. There is confusion in the record. I have doubt in the righteousness of the verdict. Why Olaf Buckeye should get the 80 for nothing except that he gave a $3,500 mortgage upon it is not disclosed. Why he should make a deed in blank and not deliver it is not apparent. Why Henry J. Buckeye should give a $6,500 mortgage upon the 80, already subject to a $3,500 mortgage, if he had no interest in it, is not understood. Nor is it understood how he can object to a foreclosure of a warranty mortgage which he made. So I concur in the result.

I dissent to the holding that the court divided between itself and the jury a single issue. Under the charge the jury passed upon the question of the execution of the deed to the exclusion of the delivery, and the court passed upon the question of its delivery. I

see nothing improper in that. I think under the language of the charge they were plainly separate questions, though "execution" frequently includes delivery. Under the charge there was no danger of misunderstanding from this source.

DIBELL, J.
I concur in the views of the Chief Justice.