## HERALD P. DOSE AND ANOTHER v. THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA.[1]

October 20, 1939.

No. 32,102.

[1]Reported in 287 N. W. 866.

*O'Brien & Kronebusch,* for appellant.
*Sydney W. Goffstein,* for respondents.

STONE, JUSTICE.

Action to reform, and as reformed to recover upon, a Minnesota standard policy of fire insurance. Defendant appeals from the judgment for plaintiffs.

The plea for reformation was put upon the ground of mutual mistake as to the property to be covered. Plaintiffs own two properties on Hamline avenue in St. Paul, one at No. 528 and one at No. 536. The policy as issued covered No. 528. Plaintiffs assert, and therein are sustained by the decision below, that the intention was to insure No. 536, where occurred the fire damage to an amount not in dispute.

There was submitted to a jury the issue as to which of the parties, plaintiffs or defendant, was right in its assertion as to intended coverage. The question was resolved for plaintiffs. The verdict was adopted by the findings made by the trial judge. Defendant's original position went upon the erroneous theory that a special verdict is advisory rather than controlling. Our long settled rule is that upon the involved issue the verdict is final, and so, until set aside, determinative. Buzalsky v. Buzalsky, 108 Minn. 422, 122 N. W. 322; First Nat. Bank v. Quevli, 182 Minn. 238, 234 N. W. 318; In re Estate of Ydstie, 195 Minn. 501, 263 N. W. 447.

Here there was no motion below to vacate the verdict. Our only inquiry therefore is as to whether there is evidence to support it. The issue as made at the trial was exclusively one of accuracy of recollection, if not veracity, between plaintiff Herald Dose on the one hand and, on the other Alfred H. Mahre, the solicitor whose place in the case remains for further consideration. The testimony of Mr. Dose is such as, in present status of the case, to give the special verdict all the support it needs.

The policy was issued and countersigned by the Matteson Company, as defendant's agent. But the application was pro-

cured through Mahre, a fire insurance solicitor who had been licensed as such under the statute. The application was not in writing. It was procured by Mahre and by him orally communicated to the Matteson Company. Thereupon the latter as defendant's agent countersigned and issued the policy. On such evidence the argument for defendant is that Mahre was not its agent in such fashion that a mistake of fact mutual to Mahre and plaintiffs could be considered in law mutual also as between plaintiffs and defendant, and therefore ground for reformation.

We assume that, as matter of common law, Mahre was a mere broker, and not an agent of defendant, except possibly for collection of premium. Gude v. Exchange F. Ins. Co. 53 Minn. 220, 54 N. W. 1117. But we must hold that our statutes, under the circumstances of this case, so far made Mahre the agent of defendant, in procuring and submitting the application, that his mistake became that also of defendant, his principal.

As to insurance generally, our statutes, 1 Mason Minn. St. 1927, § 3348, *et seq.* not only provide for the state licensing of them but also distinguish between agents and brokers. If that were all, defendant, we assume, would rightly argue that Mahre remained a mere broker or go-between and did not become the agent of defendant. But as to fire insurance we have a special and determinative statute. It is in § 3516 and reads thus:

"Every person who solicits insurance and procures an application therefor shall be held to be the agent of the party afterwards issuing insurance thereon or a renewal thereof."

That mandate does not define the scope of the agency it creates. But plainly the intention was that the broker who, under the statute thus becomes the agent of the insurer, must represent the latter as matter of law in procuring and submitting the application, and getting the policy issued accordingly. To give the statute any less effect would be to nullify it.

This provision first came into our law as part of the insurance code enacted by L. 1895, c. 175. It is the concluding sentence of § 25 having to do mostly with coinsurance and valued policies. In

the latter field the burden of showing invalidating increases of risk by reason of change of ownership or condition of the insured property, either before or after loss, was placed upon the insurer, "any thing in the application or the policy of insurance to the contrary notwithstanding." There follows, as the concluding sentence of the section, the provision above quoted, making the solicitor the agent of the insurer.

Because, in 1895, as they are now, most fire insurance policies were issued on oral rather than written application, it cannot be supposed that the statutory agency of a solicitor arose only when he procured a written application. The broad generality of the language plainly embraces oral as well as written applications, so that it applies to this case, where the application was oral.

In our opinion this statute disposes of the case. Inasmuch as Mahre, in procuring the application and its submission to defendant's local agent, was the agent of the insurer, his error became and remains that of defendant. Hence, upon resolution by special verdict of the issue of mutual mistake in favor of plaintiffs, reformation properly followed.

The result in Gude v. Exchange F. Ins. Co. 53 Minn. 220, 54 N. W. 1117, was otherwise for the simple reason that the decision was based upon the common law of brokerage and agency, there being then, 1893, no statute to alter the common-law rule. It may be that in Fredman v. Consolidated F. & M. Ins. Co. 104 Minn. 76, 116 N. W. 221, 224, 124 A. S. R. 608, the special application to fire insurance of the agency created by what is now § 3516 was overlooked, or at least not given its proper significance. While it was there said that the statute does not define the scope of the agency, the decision goes on to assert that (104 Minn. 83):

"When the company accepts the benefit of the work of a soliciting agent, it cannot thereafter disclaim the agency of the solicitor in the doing of anything necessarily implied in the specific act thus authorized."

So, we repeat, it is enough that under the statute the solicitor becomes agent of the insurer. A principal function for him is to

procure and submit as such agent a correct description of the property to be covered. If he errs therein, the error is chargeable to the insurer, his statutory principal. That is enough to sustain this decision. See Zenith Box & Lbr. Co. v. National Union F. Ins. Co. 144 Minn. 386, 175 N. W. 894.

Judgment affirmed.

