William A. CRAIGIE and Bette P. Craigie, Plaintiffs,

v.

FIREMEN'S INSURANCE COMPANY OF NEWARK, NEW JERSEY, a corporation, Defendant and Third-Party Plaintiff,

v.

MUTUAL SERVICE CASUALTY INSURANCE COMPANY, a Minnesota corporation, Third-Party Defendant.

No. 4-60-Civ.-226.

United States District Court
D. Minnesota,
Fourth Division.

March 14, 1961.

Kenneth W. Green, Minneapolis, Minn., for plaintiffs.

John P. Gorman, Chicago, Ill., and Frank X. Cronan, Minneapolis, Minn., for defendant and third-party plaintiff.

John A. McEachron, Jr., Minneapolis, Minn., for third-party defendant.

DEVITT, Chief Judge.

This is a motion by defendant Firemen's Insurance Company (Firemen's) for judgment notwithstanding a $96,500 jury verdict and, in the alternative, for a new trial. Jurisdiction was based on diversity of citizenship and amount in controversy. A statement of some facts and occurrences at the trial is necessary for an understanding of the issues involved.

This controversy arises as the result of a fire which completely destroyed plaintiffs' 22-room Lake Minnetonka home on December 24, 1959. Plaintiffs and their children were visiting relatives in Minneapolis for Christmas Eve festivities at the time of the fire and no one was injured.

In April of 1957 plaintiffs purchased this large frame house for $25,000. The house had been vacant for some time prior to the date of purchase. It was located several hundred feet from the lake, and the property consisted of more than 300 feet of shore line. Also on the property, and included in the purchase price, was a garage and beach house.

The initial fire insurance on the house and attendant buildings, in the amount of $25,000, was written by Mutual Service Casualty Insurance Company, third-

712

party defendant in this action. The insurance was effective from April 17, 1957 to April 17, 1960, and was written for Mutual Service by Mr. Wilbur Bennington, a licensed agent for Mutual Service who also, on occasion, brokered insurance for other companies.

For some months prior to December of 1959, plaintiff William Craigie had been negotiating with Mr. Henry Atwood for the purchase of Atwood's interest in the McGarvey-Atwood Coffee Company of Minneapolis. Craigie did not have sufficient capital and the testimony of both Atwood and Craigie indicated that, as part of the transaction, Atwood was to take a second mortgage on Craigie's home and that, at Atwood's insistence, the fire insurance would be raised to $75,000.

Thereupon, some time early in December, 1959, Craigie called Bennington and told him that he wanted the fire insurance on his home raised from $25,000 to $75,000, effective December 22, 1959. Bennington apparently knew that he couldn't write that much in his own company on this risk, so he called the Brandt Insurance Agency in Minneapolis. He had on occasion, over a period of years, brokered some insurance through the Brandt Agency. On this occasion, Bennington did not tell the Brandt Agency that the Mutual Service fire policy existed and he was not asked about other insurance.

Prior to December 17, 1959, local employees of the Loyalty Group of insurance companies, of which Firemen's is a part, had been importuning the Brandt Agency to give the Loyalty Group more business. Consequently, when the call for this insurance came from the Brandt Agency late in the afternoon of December 17th, Firemen's personnel, apparently to impress the Brandt Agency, quickly wrote the fire policy to plaintiffs for $75,000 without making any inspection or investigation. That very evening, Mr. Howard Genz, branch manager for Loyalty Group, hand-carried the policy to the Brandt Agency Christmas party and delivered it to the Brandt personnel.

Subsequently, Bennington received the policy from Brandt and delivered it to plaintiffs some time prior to the December 22nd effective date. The house burned to the ground on December 24th.

The Firemen's insurance policy, in addition to the $75,000 on the house, also covered appurtenant private structures for $7,500, additional living expenses for $15,000, and personal property for $30,000. Several months after the fire, as required by the policy, plaintiffs submitted a Statement in Proof of Loss to Firemen's in the amount of $35,002.14 for personal property. Firemen's, in a letter dated March 18, 1960, rejected the proof of loss and denied all liability for the fire. This action was commenced August 9, 1960.

The case was tried to a jury commencing November 22, 1960. Defendant Firemen's asserted four basic defenses to plaintiffs' action. Firemen's attempted to prove (1) that Bennington committed fraud by concealing from the Brandt Agency the existence of the $25,000 Mutual Service fire policy on the Craigie home, (2) that it was not the intention of the parties that the Firemen's policy should replace the Mutual Service policy and become effective until the Craigie-Atwood business transaction was consummated, (3) that plaintiffs fraudulently overvalued much of their personal property in the proof of loss, and (4) that plaintiffs were in poor financial condition, needed money for the business transaction, and, consequently, set the fire.

At the conclusion of the evidence, the Court dismissed third-party defendant Mutual Service from the case. The trial lasted twelve days, and on December 9, 1960 resulted in a jury verdict for plaintiffs against Firemen's in the amount of $96,500.

This Court in deciding the issues raised must look to Minnesota law and

attempt to determine what conclusions the Supreme Court of Minnesota would reach were it called upon to decide the specific questions involved in this controversy. Milwaukee Ins. Co. v. Kogen, 8 Cir., 1957, 240 F.2d 613, 615.

Firemen's first contends in this motion that the Court erred in instructing the jury that Bennington was the agent of Firemen's and that any knowledge Bennington had was chargeable to Firemen's. It asserts that since Bennington was not a licensed agent for Firemen's, but a mere broker, he must be considered the agent of plaintiffs. The law in Minnesota does not support this contention.

While it is the law in Minnesota that a mere insurance broker is not an agent of the insurance company, Dose v. Insurance Co. of State of Pennsylvania, 1939, 206 Minn. 114, 287 N.W. 866, 868; Fredman v. Consolidated Fire & Marine Ins. Co. of Albert Lea, 1908, 104 Minn. 76, 116 N.W. 221, except for collecting premiums,[1] it also appears to be the law in Minnesota that an insurance broker is not the agent of the insured. See Zenith Box & Lumber Co. v. National Union Fire Ins. Co., 1920, 144 Minn. 386, 175 N.W. 894, 896. The situation in this case, however, is specifically controlled by the Minnesota "valued policy" statute, M.S.A. 65.05.[2] It is clear from the Minnesota Supreme Court's interpretation of that statute in Dose v. Insurance Co. of State of Pennsylvania, 1939, 206 Minn. 114, 287 N.W. 866, 868, that Bennington in this case was the agent of

Firemen's and any fraud or mistake on his part cannot be attributed to the plaintiffs. As the Court said in the Dose case at page 868 of 287 N.W.:

" * * * plainly the intention was that the broker who, under the statute thus becomes the agent of the insurer, must represent the latter as matter of law in procuring and submitting the application, and getting the policy issued accordingly. To give the statute any less effect would be to nullify it."

This interpretation is in line with the whole thrust of the "valued policy" statute which in effect requires fire insurance companies at their peril to check and inspect buildings and structures before issuing a policy.

I see no reason, as defendant suggests, why there should be a distinction under the statute between the situation where the "agent" makes a mistake, as in the Dose case, and the situation where he commits fraud. The statute is clear and nothing therein would indicate an exception. While it is true that a basic requirement of common law agency is that the principal must agree to the agency, this statute, in effect, rejects that requirement in this situation.

Defendant Firemen's next contends that the Court erred in sending the jury back for further deliberations after refusing to accept the jury's initial verdict of $75,000 in favor of plaintiffs.

The Court instructed the jury early in the afternoon on December 7th. The

---

1. M.S.A. 72.05. "Every insurance agent or broker who acts for another in negotiating a contract of insurance by an insurance company shall be held to be the company's agent *for the purpose of collecting or securing the premiums therefor*, * * *" [Emphasis supplied].

2. "Every company insuring any building or other structure against loss or damage by fire, * * * shall cause the structure to be previously examined, * * *, and its insurable value to be fixed * * *, and the amount thereof to be stated in the policy. In the absence of any change increasing the risk, * * *, and in the absence of intentional fraud on the part of the insured, [the insurer shall pay] the whole amount mentioned in the policy or renewal * * * in case of total loss * * *. *Every person who solicits insurance and procures an application therefor shall be held to be the agent of the party afterwards issuing insurance thereon or a renewal thereof.*" [Emphasis supplied].

jury returned to the courtroom late the next morning, at its request, and was instructed further in connection with arson. That afternoon the jury submitted a verdict for plaintiffs in the sum of $75,000. The Court did not accept the verdict, but re-instructed the jury—first as to the defenses relied on by defendant Firemen's and second as to the fact that, (because of the Minnesota "valued policy" statute[3]), if they found for the plaintiffs they must award not only the $75,000 for the house, but also the reasonable value of the furniture and clothing destroyed by the fire, plus reasonable living expenses that the plaintiffs incurred. The jury returned its verdict the next morning in favor of plaintiffs for $96,500.

The defendant argues that the Court should have granted its motion for judgment after the $75,000 verdict was returned on the ground that this was a finding of no recovery on the contents claim, and hence, tantamount to a finding of fraud in the proof of loss. Defendant further contends that if the jury didn't find fraud in the proof of loss, the $75,000 verdict was a compromise between liability and damages. It also asserts that the formal reading of the $75,000 verdict and the polling of the jury amounted to a recording of the verdict and that the Court could not thereafter resubmit the case to the jury.

■■ It is obvious that the jury did not follow the Court's instructions in returning the $75,000 verdict. Under the instructions, it could only return a verdict for the defendant or a verdict for the plaintiff for $75,000, *plus* the reasonable value of the personal property destroyed and the reasonable value of the additional living expenses incurred. Thus, the verdict didn't make sense. It is clearly the law in Minnesota that a Court has the right to refuse to accept a verdict and may send a jury back for

further deliberations when it has submitted an insensible verdict. See Cullen v. City of Minneapolis, 1937, 201 Minn. 102, 275 N.W. 414; Strite Governor Pulley Co. v. Lyons, 1915, 129 Minn. 372, 152 N.W. 765, 767; Craven v. Skobba, 1909, 108 Minn. 165, 121 N.W. 625, 626. It was said in the Craven case:

> "A court has the undoubted right to refuse to accept a verdict which is not in accord with the law and evidence by which the rights of the parties are to be determined."

Prior to sending the jury back, the Court instructed the jury as to the contentions of both parties, See Strite Governor Pulley Co. v. Lyons, supra, and there were no unusual circumstances or improper conduct affecting the jury prior to its return to the jury room which would prejudice either party. See Weatherhead v. Burau, 1952, 238 Minn. 134, 55 N.W.2d 703.

I am not impressed with defendant's contention that the $75,000 verdict was formally recorded and that the case could not be returned to the jurors. The jury was never discharged, and the Court did not accept the first verdict.

■ Firemen's next asserts that the finding of $21,500 for the personal property and living expenses was arbitrary and not based on the evidence. As indicated previously, plaintiffs' proof of loss on these items claimed $35,002.14. While it is my own view that those items were not worth that much, the determination of the amount was a factual question for the jury, and there was ample evidence to sustain the jury's finding. It is difficult to determine the value of hundreds of items after they have been completely destroyed. Apropos, the United States Supreme Court said in Jose Rivera Soler & Co. v. United Firemen's Insurance Co. of Philadelphia, 1936, 299 U.S. 45, 50, 57 S.Ct. 54, 56, 81 L.Ed. 30:

3. M.S.A. 65.05.

" * * * Policy holders may present inaccurate proofs of loss without conscious dishonesty or intent to defraud; different views of values are common; memory is faulty; insurance company and assured often entertain widely different views concerning the policy; and evidence cannot always be produced to establish something declared to be true in entire good faith."

Finally, defendant contends that it was prejudiced by a newspaper article printed in the St. Paul Pioneer Press on the morning of December 9th, which described the occurrence of the previous day when the Court refused to accept the $75,000 verdict.

■ After the jury returned its $96,500 verdict and prior to the jury's discharge, the Court interrogated the jurors concerning the newspaper article. It was revealed that three jurors, including the foreman, read the article prior to going into the jury room that morning. All three indicated that reading the article did not influence them in reaching the verdict. It also appeared that the newspaper article was read to all the jurors by another juror in the jury room, but not until after the verdict had been reached and signed.

It is my view that Firemen's was not prejudiced by these occurrences. Prejudice may not be presumed merely because jurors read a newspaper article. Eichten

v. Central Minnesota Cooperative Power Ass'n, 1947, 224 Minn. 180, 28 N.W.2d 862, 872–873; Ceylon Farmers' Elevator Co. v. Fidelity & Deposit Co., 1925, 163 Minn. 280, 287, 203 N.W. 985, 988. In addition, the newspaper article was factually correct, and no prejudice could result.[4]

The motion for judgment notwithstanding or for a new trial is denied.

Dispute exists as to when interest on the amount of recovery should commence to run.

■ The insurance policy[5] and the applicable provision providing for interest is set out in the footnote.[6] Firemen's contends that since there has never been an ascertainment of the loss, either by agreement between the insureds and the company expressed in writing, or by the filing with the company of an award[7], as required by the policy, the loss will not become payable until the Court enters judgment on the verdict of the jury. Plaintiffs argue that they should receive interest from March 18, 1960, the date Firemen's rejected the proof of loss.

Neither party to this action requested an appraisal to determine the amount of the loss as they both had a right to do under the policy. Assuming for the moment, however, that arbitration had been requested and an award entered, interest would not begin to run under the policy provisions until the award was

---

4. The newspaper article was one of the most accurate accounts of a trial proceeding that I have ever seen. The article was made a part of the file when the jurors were questioned concerning it.

5. M.S.A. 65.011.

6. "The amount of loss for which this company may be liable *shall be payable 60 days after proof of loss,* as herein provided, is received by this company and *ascertainment of the loss is made either by agreement between the insured and this company expressed in writing or by the filing with this company of an award as herein provided.* It is

moreover understood that there can be no abandonment of the property insured to the company, and that the company will not in any case be liable for more than the sum insured, *with interest thereon from the time when the loss shall become payable, as above provided.* [Emphasis supplied].

7. The word "award" used in the statute obviously refers to the award of the appraisers—not to the award of a jury. The statute uses the phrase "award as herein provided." The only "award" considered in the statute is that of the appraisers.

**716**

filed with the insurance company. See Schrepfer v. Rockford Ins. Co., 1899, 77 Minn. 291, 79 N.W. 1005; Produce Refrigerating Co. v. Norwich Union Fire Ins. Soc., 1904, 91 Minn. 210, 97 N.W. 875, 98 N.W. 100. To that extent, the statutory policy provisions are patently clear.

We have a different situation in this case, however, since the defendant absolutely disclaimed all liability on March 18, 1960 when it rejected plaintiffs' proof of loss. The statutory provision does not specifically mention a situation, such as here, where the insurer disclaims all liability, but in a recent case the Minnesota Supreme Court interpreted the statute to allow interest from the date 60 days after which the defendant insurance companies received the proof of loss. Marshall Produce Company v. St. Paul Fire & Marine Ins. Co., 1959, 256 Minn. 404, 435, 98 N.W.2d 280, 300. The "loss payable" clause in that case was exactly the same as involved herein.

While the opinion in the Marshall Produce case did not discuss the interest issue, but merely stated that "plaintiff is entitled to interest thereon from July 10, 1956," without specifying what that date was, the record and briefs reveal that July 10, 1956 was 60 days after plaintiff had submitted the proof of loss. It should also be noted that the interest issue in that case was fully briefed by both parties.

The Minnesota Supreme Court has on other occasions allowed interest for a period of time prior to judgment. See Wehring v. Modern Woodmen of America, 1909, 107 Minn. 25, 28, 119 N.W. 245, 247; Schrepfer v. Rockford Ins. Co., 1899, 77 Minn. 291, 79 N.W. 1005; Perine v. Grand Lodge, 1892, 51 Minn. 224, 53 N.W. 367, and in the Schrepfer case the amount of the fire loss was unliquidated.

It is my opinion that under the law of Minnesota the loss involved herein was payable 60 days after plaintiffs submitted their proof of loss to Firemen's [8] and they are therefore entitled to interest on the loss from April 6, 1960.

It is so ordered.

---

8. The proof of loss was submitted on February 6, 1960.