**R.L.B. ENTERPRISES, INC., et al., Appellants,**

v.

**LIBERTY NATIONAL FIRE INSURANCE COMPANY, Respondent,**

**Duane E. Mathews, et al., Defendants.**

No. C7–87–746.

Court of Appeals of Minnesota.

Oct. 13, 1987.

Rebecca L. Wessman, Mankato, for R.L.B. Enterprises, Inc.

Katherine A. McBride, Barbara M. Burke, Cousineau, McGuire, Shaughnessy & Anderson, Chartered, Minneapolis, for Liberty Nat. Fire Ins. Co. and Mathews, et al.

Heard, considered and decided by FOLEY, P.J., and PARKER and SEDGWICK, JJ.

## OPINION

FOLEY, Judge.

This is an appeal from the trial court's entry of summary judgment in favor of respondent Liberty National Fire Insurance Company. On appeal, appellants R.L.B. Enterprises, Inc. and Ronnie L. Bruch, claim Bert Bosshart, an insurance broker employed by Central Minnesota Casualty Agency, executed an insurance binder on July 3, 1985, for coverage in the amount of $162,000 and, therefore, Liberty National is obligated to pay the full $162,000 for the loss, instead of $145,000. Respondent claims its agent never received the July 3, 1985, insurance binder and neither Bosshart nor Central Minnesota Casualty Agency was authorized to bind insurance coverage for it. We affirm.

## FACTS

On February 27, 1985, Bruch sold a business known as the "Copper Still" to Duane and Dawn Matthews by contract for deed. The contract for deed required Bruch and the Matthews be named as co-insureds on all insurance policies covering the Copper Still until the contract for deed was paid in full.

Bosshart handled all of the Copper Still's insurance accounts. On July 2, 1985, Bosshart initiated a meeting with Bruch and the Matthews to suggest that the Copper Still's current insurance carrier, Union Indemnity Insurance Company, be changed. Bruch and the Matthews agreed to the change and Bosshart prepared a cancellation request/policy release for Union Indemnity effective July 2, 1985, at 12:01 a.m. Bosshart also prepared an insurance binder for fire insurance coverage in the amount of $162,000 with Liberty National, effective from July 3, 1985, through September 3, 1985. Both the cancellation request/policy release and the insurance binder were prepared on standard insurance forms.

Liberty National is a foreign corporation licensed to sell insurance in Minnesota. Liberty National's general agent, J. Gordon Gaines, Inc., is a foreign corporation with an office in Edina, Minnesota.

The July 2, 1985, insurance binder was never transferred to either Liberty National or its agent, Gaines. On July 23, 1985, Bosshart called Gaines and requested coverage in the amount of $145,000, a $17,000 reduction from the July 2, 1985 insurance binder that Bosshart wrote. Gaines assigned a policy number and bound insurance in the amount of $145,000, effective July 23, 1985, for a one-year term. Bosshart never notified Bruch or the Matthews of the $17,000 reduction in the amount of coverage.

On August 5 and 8, 1985, fires occurred at the Copper Still which resulted in a total loss.

R.L.B. and Bruch have previously been granted partial summary judgment, which determined that Union Indemnity insurance policy was effectively canceled on July 2, 1985. Liberty National has paid appellants $145,000, the amount it claims are the policy limits.

## ISSUES

1. Did the trial court err by granting summary judgment?

2. Did the trial court err by determining that appellant was not entitled to consequential and punitive damages?

## ANALYSIS

1. On review of summary judgment, we must determine whether there are any genuine issues of material fact and whether the trial court erred in its application of the law. *Betlach v. Wayzata Condominium,* 281 N.W.2d 328, 330 (Minn.1979).

In *Eddy v. Republic National Life Insurance Co.,* 290 N.W.2d 174 (Minn.1980), the Minnesota Supreme Court held:

A person who procures insurance for others can be an insurance agent, an insurance broker, or both. The essence of the difference is that whereas *an insurance agent acts on behalf of a particular insurance company, an insurance broker acts on behalf of the prospective insured.* In which capacity a person is acting is a question of fact.

*Id.* at 176. (emphasis added) (citing *Morrison v. Swenson,* 274 Minn. 127, 142 N.W.2d 640 (1966)); *see also* Minn.Stat. § 60A.02, subd. 7 (Supp.1985). Thus, the question for us to determine is whether Bosshart was acting as a broker for R.L.B. and Bruch, or as an insurance agent for Liberty National, when he executed the insurance binder on July 2, 1985, for $162,000 of coverage.

In *Morrison,* the Minnesota Supreme Court found the following factors should be considered when determining whether an individual is a broker or an agent:

1) Was the broker at the time of effecting the insurance actually or ostensibly connected with the insurer and employed by it, or was he acting independently of any employment by the company?

2) From whom did the broker's express or implied authority to do the act in question originally proceed?

3) Was the act one which the broker was expressly authorized to do, or was it a usual and necessary means to accomplish the execution of the authority conferred?

4) Was the act done independently of the original employment, and if so, for whom, at whose instance?

5) Which party could the broker hold directly responsible for remuneration at the time the act in question was done?

6) Was there any limitation on the broker's ostensible authority, of which the person dealing with him was, or ought to have been, cognizant?

7) Was there any ratification by the ostensible principal of the claimed authorized act?

*Id.* at 136, 142 N.W.2d at 646.

■ Applying the *Morrison* factors, we find Bosshart was not acting as Liberty National's agent on July 2, 1985 when he bound insurance coverage in the amount of $162,000. Bosshart is employed by, and is the general manager of, Central Minnesota Casualty Company and had handled all the insurance for the Copper Still, including casualty, liability, workers' compensation, and dram shop, for two years prior to the fires. Moreover, Gaines was Liberty National's only authorized agent in Minnesota. Bosshart had no authority to bind coverage for Liberty National.

Further, the insurance binder Bosshart used was a standard insurance form. The only reference to Liberty National is the company's name which was handwritten on the form. *Compare Johnson v. Ostenso,* 250 Minn. 213, 216–18, 84 N.W.2d 269, 271–72 (1969) (where the agent used preprinted application blanks supplied by the insurance company with the company's name on it, the agent was held to be an agent of the insurance company); *Morrison,* 274 Minn. at 133, 142 N.W.2d at 644 (quoting *Kausal v. Minnesota Farmers' Mutual Fire Insurance Association,* 31 Minn. 17, 20, 16 N.W. 430, 430 (1883) (an insurance company cannot deny an agency relationship with its salesperson when "[t]hey supply these agents with printed blanks, stimulate them by the promise of liberal commissions, and then send them abroad in the community to solicit insurance")).

R.L.B. and Bruch contend the supreme court's holding in *Dose v. Insurance Co. of Pennsylvania,* 206 Minn. 114, 287 N.W. 866 (1939), compels a finding that Liberty National is liable for coverage in the amount of $162,000. However, we find that this case is distinguishable from *Dose.*

*Dose* involved an action to reform and to recover upon the reformed standard Minnesota fire insurance policy. *Id.* at 114, 287 N.W. at 867. There, the policy was issued and countersigned by the insurance company, but the application, procured through a fire insurance solicitor, was not in writing. *Id.* at 115–16, 287 N.W. at 867–68. The controversy in *Dose* involved exactly what property was covered under the insurance policy. The *Dose* court held:

> [U]nder the circumstances of this case, so far made [the insurance solicitor] the agent of defendant, in procuring and submitting the application, that his mistake became that also of defendant, his principal.

*Id.* at 116, 287 N.W. at 868.

Here, however, R.L.B. and Bruch's insurance broker, Bosshart, telephoned Gaines

on July 23, 1985, and requested coverage in the amount of $145,000. Bosshart never told Liberty National, or its agent, Gaines, that he originally bound coverage in the amount of $162,000. We cannot hold Liberty National liable for an additional $17,000 of coverage of which it had no knowledge. Further, while we acknowledge that R.L.B. and Bruch may have a cause of action against Bosshart, that question is not before this court.

R.L.B. and Bruch also contend that Minn. Stat. § 65A.14 requires a determination that Bosshart, a solicitor of insurance, is statutorily held to be Liberty National's agent. Minn.Stat. § 65A.14 provides:

> Every person who solicits insurance and procures an application therefor shall be held to be the agent of the party afterward issuing insurance thereon or a renewal thereof.

In *Dose*, the Minnesota Supreme court stated:

> [The statute] does not define the scope of the agency it creates * * * When the company accepts the benefit of the work of a soliciting agent, it cannot thereafter disclaim the agency of the solicitor in the doing of anything necessarily implied in the specific act thus authorized.

*Id.* at 117, 287 N.W. at 868 (emphasis added) (quoting *Fredman v. Consolidated Fire & Marine Insurance Co.*, 104 Minn. 76, 83, 116 N.W. 221, 224 (1908)).

Here, Liberty National is not disclaiming liability for insurance coverage bound in the amount of $145,000 by its agent, Gaines. In fact, Liberty National has already paid R.L.B. and Bruch $145,000. Liberty National does, however, disclaim the additional $17,000 of coverage bound by Bosshart, who was not authorized to bind coverage for it. Therefore, R.L.B. and Bruch's reliance on Minn.Stat. § 65A.14 is misplaced.

We find that the trial court did not err in granting summary judgment in favor of Liberty National. The trial court properly found no genuine issues of material fact at dispute in this case. The Union Indemnity insurance policy was effectively canceled on July 2, 1985, when Bosshart prepared

the cancellation request/policy release. The Liberty National insurance policy did not become effective until July 23, 1985, when it was written by one of its agents for coverage in the amount of $145,000. Moreover, the trial court has not erred in its application of the law.

■ 2. It is well settled that consequential and punitive damages cannot be recovered for breach of contract unless the breach is accompanied by an independent tort. *Haagenson v. National Farmers Union Property & Casualty Co.*, 277 N.W.2d 648 (Minn.1979). *See also Saltou v. Dependable Insurance Co.*, 394 N.W.2d 629, 633 (Minn.Ct.App.1986) ("appellants must show more than malicious failure to pay an insurance claim in order to recover extra-contractual damages").

Since R.L.B. and Bruch do not allege that Liberty National has committed an independent tort, the trial court properly determined that R.L.B. and Bruch were not entitled to consequential and punitive damages.

### DECISION

Affirmed.