# EMPLOYERS MUTUAL CASUALTY COMPANY v. CHICAGO, ST. PAUL, MINNEAPOLIS & OMAHA RAILWAY COMPANY.[1]

December 28, 1951.

No. 35,496.

[1]Reported in 50 N. W. (2d) 689.

*Warren Newcome, Gerald F. Fristensky,* and *George H. Henke,* for appellant.

*Streissguth, Berens & Rodenberg,* for respondent.

MAGNEY, JUSTICE.

Plaintiff, Employers Mutual Casualty Company, issued to one Clement F. Lange a liability insurance policy on Lange's automobile, whereby it agreed to indemnify Lange for any loss or liability by reason of injury or loss sustained by any person as a result of the operation of said automobile.

Defendant railway company has a spur track which crosses trunk highway No. 99 a short distance east of the Minnesota River bridge at the city of St. Peter.

In the evening of July 15, 1947, Lange was driving his automobile in an easterly direction on highway No. 99 and across said track of defendant. The automobile collided with a tank car which had been spotted on the spur track. As a result, one Marcella Lange, a passenger in the automobile, was seriously injured. She instituted suit against Lange and the railway company. During the pendency of the action, defendant entered into negotiations with Marcella Lange which resulted in a settlement on May 17, 1948. By its terms, defendant paid to Marcella $6,000, in consideration of which the action was dismissed as to the railway company, and in further consideration of which Marcella executed a covenant not to sue in favor of defendant.

Plaintiff, as insurer of Lange, also entered into negotiations for an amicable settlement of Marcella's claim. A settlement was agreed upon on May 27, 1948, just ten days after the settlement with the railway company. By the terms of insurer's stipulation, Marcella was paid $5,000 in full settlement and release by her of all claims for the injuries referred to. Upon payment of the $5,000, the action by Marcella was dismissed with prejudice.

Plaintiff claims that the settlement was in all respects reasonable, fair, and provident, and that upon the payment of the $5,000 it became subrogated to all the rights of Lange growing out of this settle-

ment and payment, including the right to contribution from the railway company as a joint tortfeasor. It asked for contribution for one-half of $5,000. The trial court held that plaintiff was entitled to contribution in the sum of $2,500, being one-half the amount paid to Marcella by plaintiff as insurer of Clement Lange. Defendant appeals from the order denying its motion for a new trial.

■■ As stated, Lange's automobile collided with a tank car spotted on defendant's spur track south of the highway. Plaintiff's evidence tended to show that the north end of the tank car encroached upon the traveled portion of the highway, while defendant's evidence was to the effect that the tank car did not so encroach. Lange's automobile struck the north end of the tank car. The evidence as to the encroachment was therefore in direct conflict. The court submitted to the jury two special interrogatories, only one of which concerns us here. This special interrogatory read:

"Was the defendant railroad company guilty of negligence in permitting one of its tank cars to be and to remain on its stock track *on or near* Trunk Highway No. 99 at the time of the collision between the Lange automobile and such tank car?" (Italics supplied.)

The jury answered the question in the affirmative. Other issues were tried to the court without a jury. The court ignored the finding of fact made by the jury and did not incorporate it in its findings of fact. In paragraph 5, the court found that—

"defendant * * * permitted a tank car to be and remain upon the spur track above referred to and *within the limits of the right-of-way* of said Highway 99, and within the traveled portion thereof * * *." (Italics supplied.)

Under the wording of the question submitted to it, the jury could find as it did find, that defendant was negligent in spotting the tank car *near* the traveled portion of the highway, even if it did not encroach upon the highway. Thus, in answering the question "Yes," the jury found that, whether the tank car encroached upon the highway or was spotted near the highway, in either case the defendant

was negligent. Thus, by the wording of the verdict, defendant could be found guilty of negligence whether the jury adopted plaintiff's or defendant's version of the facts. It is obvious that if defendant's version represented the true situation, it could not be held guilty of negligence.

■ A court may not disregard a jury verdict on specially submitted issues and make findings contrary to or inconsistent with the verdict. Buzalsky v. Buzalsky, 108 Minn. 422, 122 N. W. 322; Nienow v. Village of Mapleton, 144 Minn. 60, 174 N. W. 517; First Nat. Bank v. Quevli, 182 Minn. 238, 234 N. W. 318; Dose v. Insurance Co. 206 Minn. 114, 287 N. W. 866. Such findings made by a jury upon questions of fact submitted to it are not simply advisory, but are as binding on the court as a general verdict.

If by the special verdict negligence was based on the evidence that the tank car was spotted off the highway, it is plain that the finding of negligence cannot be supported. Since there is no way of knowing on what ground the jury found defendant negligent, whether on a fact which would constitute negligence or on a fact which would not constitute negligence, the special verdict submitted was prejudicial. Cf. Cavallero v. Travelers Ins. Co. 197 Minn. 417, 267 N. W. 370. Because of this error, if nothing else appeared in the case, a new trial would have to be granted.

Defendant presents with persuasive force other claimed errors on the part of the trial court which would entitle it to a new trial. In view of the disposition we are making of the case, no necessity is apparent why they should be considered and determined.

■ But defendant contends that under the facts of the case and the law applicable to such facts it is entitled to an order for judgment in this court and not merely to a new trial.

Shortly prior to May 19, 1948, the attorney for Marcella advised counsel for Lange and counsel for the railroad company that the action could be settled for $12,000. The company was agreeable to settlement on that basis and offered to contribute $6,000 if Lange's insurer would pay the balance. The insurer declined to contribute 50 percent of the amount for which the case could be settled. The

maximum amount it would agree to contribute was 25 percent. Thereupon, the railroad company, as has been stated, paid Marcella $6,000 for a covenant not to sue and a dismissal of her action. On May 20, 1948, counsel for Lange and his insurer were advised of such payment, covenant, and dismissal. On May 27, 1948, plaintiff as Lange's insurer paid Marcella $5,000 for a release in favor of Lange and a dismissal of her action as against him. The instant action for contribution followed.

It is well settled in this state that there may be contribution between joint tortfeasors where the one seeking contribution was not guilty of intentional wrong, and where the ground of the original common liability was simple negligence in a lawful undertaking. Ankeny v. Moffett, 37 Minn. 109, 33 N. W. 320; Underwriters at Lloyds v. Smith, 166 Minn. 388, 208 N. W. 13; Fidelity & Casualty Co. v. Christenson, 183 Minn. 182, 236 N. W. 618.

■ The party seeking contribution need not make payment pursuant to a judgment, but may settle by a fair and provident payment and then seek contribution from other joint tortfeasors for their fair share of the settlement price. D. M. & N. Ry. Co. v. McCarthy, 183 Minn. 414, 236 N. W. 766. It is not claimed here that the settlement made by plaintiff was not a provident one.

The question for our determination is whether a tortfeasor who has paid pursuant to a provident settlement and who has secured a release from the injured person of his cause of action may seek contribution from a tortfeasor jointly liable who has a defense to an action against him by the injured party. Specifically, as in the instant case, can such a joint tortfeasor seek contribution from a tortfeasor jointly liable who has bought a defense by paying the injured party a substantial amount of money for a covenant not to sue?

■ If a valid cause of action by Marcella against Lange and the railway company is assumed, the execution of a covenant not to sue does not destroy the common liability necessary to a cause of action for contribution. "Common liability" exists immediately after the acts of the tortfeasors which give rise to a cause of action

against them. D. M. & N. Ry. Co. v. McCarthy, 183 Minn. 414, 236 N. W. 766. But, in addition to the requirement of common liability, the right to contribution rests on a payment by one which thereby relieves the other from liability. Where others jointly liable pay the obligation and thereby relieve the person not paying from a positive liability, the latter is bound to contribute his share of the total obligation. Township of Canosia v. Township of Grand Lake, 80 Minn. 357, 83 N. W. 346; 2 Dunnell, Dig. & Supp. § 1920.

■ However, there is a more fundamental principle underlying the doctrine of contribution. Contribution is based on the simple demand of justice, often expressed in the maxim that "equality is equity." Van Brunt v. Gordon, 53 Minn. 227, 230, 54 N. W. 1118. One who has paid more than his share is entitled to contribution from the other to reimburse him for the excess so paid, thus equalizing their common burden. As the Wisconsin court said in Wait v. Pierce, 191 Wis. 202, 226, 210 N. W. 822, 823, 48 A. L. R. 276:

"* * * Whether the common obligation be imposed by contract or grows out of a tort, the thing that gives rise to the right of contribution is that one of the common obligors has discharged more than his fair equitable share of the common liability."

The fact that one tortfeasor has secured a defense, such as purchasing a covenant not to sue, to a claim by an injured party does not alter the fact that there has been an injury and loss resulting partially from the tortious act of that person. Justice requires that he pay his fair and honest share of the underlying obligation. The later-acquired defense does not alter the basic equities of the situation.

It does not follow, however, that the general right to seek contribution is equivalent to a right to recover contribution in every case. In the instant case, it would seem that plaintiff has a right to recover by way of contribution only if it has paid more than its fair share of the loss caused by the joint tortious acts of its insured and defendant. What is the "fair equitable share" of each party where defendant has paid $6,000 to secure a personal defense

but not a release of the other party, and where plaintiff thereafter pays $5,000 for a release of the injured party's cause of action?

Payment by defendant of $6,000 did not release plaintiff's insured from liability to Marcella. She could thereafter have secured a judgment against Lange, the insured, for the entire amount of her damages. Joyce v. Massachusetts Real Estate Co. 173 Minn. 310, 217 N. W. 337. But the consideration paid by one of the joint tortfeasors for a covenant not to sue probably may not be irrelevant to a determination of the fair share of the total burden to be ultimately borne by each of them.

Plaintiff relies on Musolf v. Duluth Edison Elec. Co. 108 Minn. 369, 122 N. W. 499, for the proposition that the consideration paid for a covenant not to sue cannot be deducted from a judgment against an unreleased joint tortfeasor and infer that it cannot be considered in a suit for contribution. In the Musolf case, an employe of the telephone company was killed as the result of contact with wires of the electric company. The decedent's administratrix accepted $1,000 from the telephone company and executed a covenant not to sue, but reserved any rights against the electric company. The agreement provided that if the administratrix should be unsuccessful against the electric company she might return the $1,000 to the telephone company and proceed against it in a wrongful death action. The agreement provided specifically that *the $1,000 was not payment of damages or compensation.* This court held that the agreement was a covenant not to sue rather than a release, that the electric company was not protected but was fully liable for damages up to the statutory limit, and that the $1,000 was not to be deducted from plaintiff's recovery against the electric company. The court did not lay down a general rule that payments made in consideration of a covenant not to sue were never to be considered as partial compensation to the injured person. In fact, the court (108 Minn. 378, 122 N. W. 503) recognized that a release received in part satisfaction only might reduce the amount subsequently recoverable, and cited as an example Ellis v. Esson, 50 Wis. 138, 6 N. W. 518, 36 Am. R. 830.

In the Ellis case, the jury found that $200 received in consideration of a covenant not to sue was not intended as full compensation for damages, and the court held that this did not release a joint tortfeasor, but did reduce his damages *pro tanto*. The court stated (50 Wis. 148, 6 N. W. 520):

"* * * when the contract is not of such a nature that the law deems it conclusive evidence that the injured person *has been satisfied for the wrong,* then it becomes a question of fact for the court or jury whether what he has received of the one wrong-doer was received in full satisfaction of his wrong; and, if it appears that it was not so received, it is only *pro tanto* a bar to an action against the other wrong-doers."

This rule of *pro tanto* satisfaction is in accord with the great weight of authority in the United States. Van Gilder v. Gugel, 220 Wis. 612, 265 N. W. 706, 105 A. L. R. 824; Haase v. Employers Mut. Liability Ins. Co. 250 Wis. 422, 27 N. W. (2d) 468 (where consideration for covenant exceeds damages found by the jury against unreleased tortfeasor, there can be no recovery by the injured party); Restatement, Torts, § 885, *comment d;* Annotation, 104 A. L. R. 931, and numerous cases therein cited. In 45 Am. Jur., Release, § 4, it is stated:

"An injured person can have but one satisfaction for his injuries; and therefore the amount paid by the tort-feasor in whose favor the covenant not to sue was given will be regarded as a satisfaction pro tanto as to the joint tort-feasors."

In the Musolf case, *supra,* the agreement specifically provided that there was no element of compensation for injury in the payment. The intention of the parties that the payment was not a full or partial release of the electric company was clear. The payment and the covenant were both conditioned. This not only negatives any inference of compensation for injuries, but leads inescapably to the conclusion that the payment made by the telephone company was to induce the injured person to seek recourse against the electric company only if recovery could be had from it and to avoid for

the telephone company the expense and annoyance of an action against it.

The instant case is quite different on its facts. Here, the covenant not to sue is absolute. The payment was a substantial sum and was one-half the amount named by Marcella as reasonable compensation for her injuries. It is clear that the parties intended the payment as partial compensation and not merely to avoid the expense and annoyance of a suit against the railroad company. Prior to the execution of the covenant not to sue, Marcella and her counsel were insisting upon a payment in settlement in excess of $11,000. Marcella testified that she would never have released her claim for $5,000 except for the $6,000 previously received. This is not to say that the payment of $6,000 was entirely in compensation for Marcella's injuries. Undoubtedly there may have been an element of consideration for a defense thereby acquired, but it would seem that the compensation for the injury at least equalled the amount paid by plaintiff to Marcella for a full release of her claim. In an action for contribution against a party who has paid a substantial sum and secured the benefit of a covenant not to sue, it seems entirely proper for the defendant to show the payment made by him as evidence of partial compensation of the injured party. In the Musolf case, *supra*, the question of contribution was not presented. All the court decided in that case was that the particular covenant not to sue, which differed in its terms from the usual covenant not to sue, was not a release of a joint tortfeasor.

The rule which we are following is in accord with the realities of the situation and one which will achieve a just and equitable sharing of the burden between joint tortfeasors. In a case where the covenant not to sue has been secured for a nominal sum and it is apparent that the intention of the parties was only to relieve the covenanting tortfeasor of the annoyance and expense of defending the suit, the amount paid will not be considered in later determining the extent of his obligation to contribute. But where the payment is compensation for damages to the injured party, the payment, to the extent that it is compensation, will be a *pro tanto* re-

duction of his eventual liability for contribution. The rule will facilitate an equitable division of the costs of harm inflicted by the tortfeasors and yet make it possible for a joint tortfeasor to settle the claim against him despite the refusal of his co-obligors to join in the settlement. The law favors settlement of claims without recourse to litigation. The rule adopted will protect the person who settles for his share; yet it will leave him subject to claims for contribution in those cases where he settled by a payment of less than his share.

In this case, Marcella was willing to release her claim by receipt of payment of $12,000. The railway was willing, but plaintiff was not willing, to pay half that amount. Whether plaintiff was justified in its reasons for unwillingness to share one-half is unimportant. The significant fact is that the railway company then paid one-half; that plaintiff was able to get a release for $5,000, whereas before the railway company's payment it could not get a settlement for less than $12,000; and that Marcella would have refused to give a release for $5,000 if she had not already been paid $6,000.

It is our opinion that judgment should be entered for defendant.

Order reversed with directions to enter judgment for defendant.