COUNTY OF DODGE AND ANOTHER v. ROY N.
MARTIN AND OTHERS.
R. T. GRIFFITH AND OTHERS, THIRD-PARTY
DEFENDANTS.
EVELYN CLARK AND OTHERS, APPELLANTS.

136 N. W. (2d) 652.

July 2, 1965—Nos. 39,522, 39,523, 39,524.

490

*Daniel F. Foley,* for appellants.
*Leroy O. Tengwall,* for defendant respondents.

MURPHY, JUSTICE.

These appeals are taken from orders denying separate motions for a new trial in an action commenced by Dodge and Steele Counties against principals and sureties on bonds guaranteeing payment of costs and expenses with reference to the establishment of a drainage ditch. The defendants impleaded as third-party defendants others who had signed the petition for the establishment of the ditch claiming that they were also liable for the indebtedness represented by the bonds. The trial court concluded that all of the petitioners, including those who signed the bond and those who did not, were equally liable for their proportionate share of the expenses incurred and ordered judgment against the third-party defendants.

The issue presented requires an examination of Minn. St. 106.031, which provides that a petition be filed before a drainage improvement may be authorized, and §§ 106.041 and 106.051, which relate to the filing of a bond or bonds with sufficient sureties to pay costs and expenses in connection with the proceeding. We are asked to determine whether a right of contribution exists in favor of those who furnish to the county a bond or bonds under §§ 106.041 and 106.051 against others who signed the petition for the establishment of the ditch but did not sign the bond.

At the outset some reference should be made to the particular statutory provisions with which we are here concerned. It is provided by § 106.031 that before any public drainage system or other improvement authorized by §§ 106.011 to 106.661 is established, a petition must be filed. This petition must be signed by not less than a majority of resident owners of land over which the proposed ditch will pass or upon which the improvement is to be located. The important provision of § 106.031, which was inserted by amendment, L. 1917, c. 441, § 4, provides:

"* * * The petition shall state that the petitioners will pay all costs and expenses which may be incurred in case the proceedings are dismissed or for any reason no contract for the construction thereof is let."

The other statutory provisions with which we are concerned are §§ 106.041 and 106.051, which relate to bonds to secure payment of costs to the county in the event the proceedings are dismissed. The former statute provides that before any action is taken on the petition the petitioner shall file a bond in the sum of not less than $2,000 conditioned to pay all costs and expenses which may be incurred in case "the proceedings are dismissed or for any reason no contract is entered into for the construction of the improvement petitioned for." Should the bond so provided be insufficient, the provisions of § 106.051 require additional bonds to be furnished "to protect the county or counties from loss on account of any costs or expenses incurred or to be incurred." Should the petitioners fail to file such bond or bonds, the proceedings may be dismissed. The expenses incurred by the county shall not exceed "the penalty named in the bond or bonds given by the parties."

For some reason which is not of importance to this opinion, the proceedings were abandoned or dismissed. Bonds in the approximate sum of $71,000 were provided by certain of the petitioners. The plaintiff counties in the original action sued on the bonds and secured a judgment in the sum of $56,664.66, which represented the expenses the counties had incurred. From the record it appears that the defendants who signed the bonds brought a third-party action against the petitioners who had not signed any bond. The general thrust of the third-party complaint is that the third-party defendants, being petitioners, ought to be required to pay their proportionate share of the costs incurred in the proceedings. The trial court agreed with them and concluded that all who signed the petition were liable under the common obligation imposed by § 106.031.

■ The parties agree, as indicated by the briefs and arguments, that the outcome must depend on whether equitable principles of contribution should be applied. There does not seem to be much

dispute about the proposition that the doctrine of contribution is appropriate where there is a common liability among parties under circumstances where the situation of the parties is equal and where they are under a common burden of liability. But the third-party defendants seem to contend that this principle cannot apply here because the third-party plaintiffs lost their right to contribution when they signed the bonds required by statute; that the furnishing of the bonds to the counties represented a subsequent contract or undertaking which destroyed the original obligation created at the time the petition was signed.

Some brief reference should be made to the background of the provisions of § 106.031 which imposed liability upon those who signed the petition. Before that provision was incorporated into the statute, our court had before it County of McLeod v. Nutter, 111 Minn. 345, 126 N. W. 1100, and State ex rel. County of Murray v. District Court, 138 Minn. 204, 164 N. W. 815, 2 Minn. L. Rev. 158. It appears from those authorities that the legislature intended originally that the county should be primarily liable for expenses incurred in judicial ditch proceedings, and that when a ditch was not established those who signed the bond and their sureties were under obligation to repay the county for expenses incurred to the amount of the bond. The legislature had made no provision for collection of expenses from the petitioners who had not provided a bond, and, accordingly, where the bond provided was inadequate there was no way in which the county could be reimbursed.

It would appear that by the 1917 amendment the legislature intended that the county should no longer be primarily liable for the expenses incurred in the proceeding when the ditch was not established, but that the liability should be imposed upon those property owners who petitioned for the establishment of the ditch and who would get the benefit of it upon its completion. Accordingly, the legislature (L. 1917, c. 441, § 4) specifically imposed the obligation to pay all costs and expenses upon the petitioners. It also provided for the bond requirements of §§ 106.041 and 106.051.

These provisions of the statute were in effect in 1954 when the petition in this proceeding was originally filed.

It seems to us from an examination of these statutes that the legislature intended that those who wish to have their property benefited by ditch and drainage improvements should assume the obligation of paying the expenses themselves, rather than have the county pay, in the event the project comes to naught. We do not understand that the provisions of §§ 106.041 and 106.051, requiring bonds to be furnished to the county, in any way limit the obligation imposed by § 106.031. The statutes requiring the filing of the bonds do not suggest that such bonds take the place of the obligation imposed by § 106.031 or absolve those petitioners from the burden they assumed when they petitioned for the improvement. The provisions of §§ 106.041 and 106.051 are for the benefit of the counties; they give the counties additional security for expenses incurred and facilitate payment of them.

It is true that the action here was brought on the bonds. But the action could as well have been brought against all of the petitioners. The county chose the most expeditious and efficient method of collection rather than to take the cumbersome and time-consuming action against all of the petitioners. This it had a right to do.[1]

It is well settled that one who is compelled to pay or satisfy more than his just share of a common burden or obligation upon which several persons are equally liable or which they are bound to discharge is entitled to contribution against the others to obtain from

---

[1]The purpose of the bond is explained by the commission note to § 106.051, which reads as follows: "* * * The provisions of Section 106.04 have been changed to refer to all expenses instead of survey expenses only. We have eliminated the provision of insufficiency of sureties because of the fact that the petition itself contains a guarantee for the payment of all expenses. Because of this requirement of the petition, it is apparent that a bond is of little value except as it provides a limitation upon expenditures without knowledge and consent of the petitioners." There is nothing in the record which would indicate that the petitioners claim that the bonds required in this proceeding were furnished without their knowledge and consent.

them payment for their respective shares. The liability rests upon the implied promise between co-obligors, and if one is compelled to discharge more than his share of the obligation, the others will respond to him for their proportionate share. Merrimac Min. Co. v. Gross, 216 Minn. 244, 12 N. W. (2d) 506; Hoverson v. Hoverson, 216 Minn. 228, 12 N. W. (2d) 501; Employers Mutual Cas. Co. v. Chicago, St. P. M. & O. Ry. Co. 235 Minn. 304, 50 N. W. (2d) 689; Gustafson v. Johnson, 235 Minn. 358, 51 N. W. (2d) 108; Hendrickson v. Minnesota Power & Light Co. 258 Minn. 368, 104 N. W. (2d) 843; Koenigs v. Travis, 246 Minn. 466, 75 N. W. (2d) 478; 18 Am. Jur. (2d) Contributions, § 8.[2]

In support of their claim that the bond signers are primarily liable to the county and thus have no right of contribution from the other petitioners, the third-party defendants rely on Hartford Acc. & Ind. Co. v. Anderson, 192 Minn. 200, 256 N. W. 185. In that case an action was brought by the surety on an administrator's sale bond to require separate sureties on the administrator's general bond to contribute one-half of the amount the plaintiff surety was required to pay by reason of the administrator's failure to properly account for the proceeds of a real estate sale. We there noted that although there was a common liability in the sense that the sale bond was cumulative to that of the general bond, the liability of each surety was, nevertheless, special and limited to the particular obligation expressed in the underwriting agreement. There, the plaintiff paid no more than its just share of the separate undertaking. The obligations of the two sureties arose from separate contracts severally binding them to specific obligations. In the case before us, the common burden of liability arises out of one and the same transaction. It is imposed by their status as copetitioners according to the provisions of § 106.031. This circumstance provides the equality of equity which was absent in the Merrimac case. Nor does the application of principles of contribution lose its force because the common liability arises by provision of statute. A common burden, obligation, or liability may be imposed upon parties where such common

---

[2]Minn. St. 548.19 provides for contribution between judgment debtors.

burden is assumed by statute just as well as where it may be assumed by contract.[3]

The remaining claim of error is that there is no credible evidence to support the finding of the trial court that Vernita Dodge, a third-party defendant, signed the petition to establish the judicial ditch. The petition in this matter contains several pages signed by 149 individuals whose signatures were acknowledged. Vernita Dodge denied that her signature appeared on the petition. It appears, however, that her signature was on the petition and it was duly acknowledged before a notary public who testified that he knew Vernita Dodge personally and that the signature under the acknowledgment was his. Following Goulet v. Dubreuille, 84 Minn. 72, 86 N. W. 779, the court was of the view that the testimony of the interested party was not sufficient to overcome the certificate of acknowledgment authenticated in due form by an officer authorized to take acknowledgments. On the basis of the record, we do not feel that we would be warranted in saying that there was not sufficient evidence to support the fact determination by the trial court.

Affirmed.

Mr. Justice Sheran took no part in the consideration or decision of this case.

---

[3]In Manthey v. Schueler, 126 Minn. 87, 147 N. W. 824, we held that under a statute charging certain relatives with the support of their pauper relatives, a relative who furnishes such support not as a voluntary matter may recover by way of contribution from another relative who is equally liable.