In re the ESTATE OF Chester B.
SJERVEN, Deceased.

No. C1-84-2123.

Court of Appeals of Minnesota.

June 25, 1985.

Review Denied Sept. 13, 1985.

Randolph T. Brown, Brown, Saetre & Sellnow, Long Prairie, for the Estate.

Ralph S. Tillitt, Tillitt, McCarten, Johnson & Drummond, Alexandria, for the claimants.

Heard, considered and decided by FOLEY, P.J., and FORSBERG and LESLIE, JJ.

## OPINION

FORSBERG, Judge.

This is an appeal from a judgment entered against the estate of Chester Sjerven. The trial court held that Chester's estate owed his deceased wife Muriel's separate estate $40,000. Respondents, Muriel's children, ask this court to increase the amount awarded. We affirm.

## FACTS

Muriel Standley Sjerven married Chester Sjerven in 1972. She had three sons from a previous marriage (Michael, Hal and

Scott Standley) who are the respondents herein. Prior to their marriage, Muriel and Chester signed a prenuptial agreement providing that their estates would be kept separate.

Muriel Sjerven died on May 13, 1979. Her husband Chester represented her estate until his death on April 11, 1983. At the time of her death, Muriel owned common stock valued at $424,948.87, subject to $130,000 indebtedness in the form of promissory notes which Muriel co-signed.

Muriel's estate is still pending in Todd County Probate Court as respondents have refused to file their final receipts. The Standleys assert that Chester wrongfully depleted assets in their mother's estate.

At the time of Chester and Muriel's marriage, he owned a resort ("Chet's Penguin Resort"). During their marriage $130,000 was borrowed from a bank to pay the mortgage on the resort. Muriel co-signed the notes evidencing the loan and her individually-owned corporate stock was pledged as security. After Muriel's death, Chester paid off the bank loan in the sum of $140,000, including interest. He obtained the funds by selling stock in Muriel's estate.

Prior to October 8, 1982, Chester admitted he was indebted to the Standleys because they should have received more money from their mother's estate. In an effort to compensate them, Chester executed on that date a conditional promissory note and a will, both of which provided for payment to the Standleys of up to $180,000. However, the Standleys refused to accept the terms of the conditional promissory note, because Chester tried to limit the source of repayment and defer the date of payment by conditioning the note on the sale of the resort and the execution of an insurance policy.

Chester, nevertheless, made the Standleys beneficiaries of a $100,000 insurance policy. After his death, the Standleys received the proceeds of this policy, less the legal fees required to collect it. At trial, the Standleys claimed that Chester's estate owed them $82,250, the $180,000 payable under the note and will minus the net insurance proceeds.

The trial court found that the loan from the bank benefited only Chester's separate property and that Muriel received no consideration for co-signing the note or pledging her stock as security. It found that Chester's estate owed the Standleys $40,000, and ordered judgment in that amount.

## ISSUES

1. Was the trial court's finding that Chester had wrongfully depleted assets in Muriel's estate supported by the evidence?

2. Did the trial court err in the amount ordered repaid?

## ANALYSIS

The trial court found that the conditional promissory note and the probated will "constitute an admission by Chester that he was indebted to each of Muriel's three children because of his improper depletion of their mother's estate."

Appellants contend that the "admission" by Chester in the promissory note was an offer of settlement or compromise and should not have been admitted into evidence. However, there was no dispute as to liability when the note was signed. *See In re Commodore Hotel Fire and Explosion Cases*, 324 N.W.2d 245, 247–248 (Minn.1982) (offers of settlement are inadmissible only when there is an actual controversy at the time of the offer). The note, in any event, was not an offer to settle for a lesser amount but an admission of full liability. Testimony at trial established that the dispute was solely as to the manner of repayment.

The promissory note included the following statement of the consideration for the note:

> During our marriage, Muriel Sjerven assisted me in the operation of a business known as the Penguin Resort that I owned before our marriage. She assisted me in the operation of the business and also contributed capital for the oper-

ation of the business from assets that she owned before our marriage.

We do not agree with the trial court's conclusion that Chester was admitting an improper depletion of Muriel's estate in paying off the promissory notes from assets of her estate. Nor was there other evidence establishing that a conversion of assets occurred. Although the promissory notes were not introduced into evidence, the testimony as well as the probate file established that the stock from Muriel's estate was legally pledged as security for the notes.

The statement of consideration was, however, an admission that, as the trial court found, the notes which Muriel co-signed benefited solely Chester's separate property, Chet's Penguin Resort.

Although the trial court found a conversion of the assets in Muriel's estate, it could also have found liability based on the equitable theory of contribution.

Minnesota law imposes two threshold requirements on the right to sue for contribution: the parties must share a common liability or burden, and the plaintiff must have discharged more than his fair share of the common liability or burden. *County of Dodge v. Martin*, 271 Minn. 489, 494, 136 N.W.2d 652, 655–656 (1965). Since Muriel co-signed the promissory notes, her estate had a common liability, along with Chester, to repay them. As between the parties, however, Chester should have paid all of the notes, since they benefited only his separate estate. The right to contribution is an equitable remedy which stems from the ideals of fairness and justice. *Employers Mutual Casualty Co. v. Chicago, St. Paul, Minneapolis & Omaha Ry.*, 235 Minn. 304, 310, 50 N.W.2d 689, 693 (1951). It would not be equitable, looking to the underlying facts, to require Muriel's estate to share in the legal liability, which benefited only Chester's property.

The trial court did not make findings justifying the amount of the judgment ordered. Respondents contend that the promissory note admitted a liability of $180,000, and that judgment should have been ordered for that amount less the proceeds of the life insurance policy.

We do not agree. As noted above, the statement of consideration in the promissory note was not an admission of a conversion. Neither was it an admission of a conversion in the amount of $180,000. The testimony showed that Chester paid off $130,000 in notes, plus interest of approximately $10,000, from Muriel's estate. The remaining $40,000, which the Standleys now claim should also have been awarded them, was, according to Michael Standley's own testimony, intended as interest on the $140,000 paid out from the estate.

The trial court properly determined not to award this amount. Since the Standleys did not accept Chester's offer of repayment, his estate is not contractually obligated to pay this amount of interest. *See Tate v. Ballard*, 243 Minn. 353, 360, 68 N.W.2d 261, 266 (1954) (generally liability for interest is purely contractual). Nor are there grounds for court-imposed interest on an equitable obligation not yet legally determined. *See Holmgren v. Heisick*, 287 Minn. 386, 398, 178 N.W.2d 854, 862 (1970) (interest runs on contribution claim from the date of its determination by a jury verdict).

**DECISION**

The trial court's finding of liability is supported by the evidence, which establishes a claim for contribution. The court did not err in the amount ordered for judgment.

Affirmed.