*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1655**

In re the Estate of: Barbara Jean LaPoint, Deceased.

**Filed July 6, 2015
Affirmed
Hudson, Judge**

Otter Tail County District Court
File No. 56-PR-13-1016

Steven R. Peloquin, Peloquin Law Office, P.A., Perham, Minnesota (for appellants Kevin LaPoint and Monica LaPoint)

Graham Butler, Graham Butler Legal Services, P.A., Roseville, Minnesota (for respondent Darrin LaPoint)

Considered and decided by Hudson, Presiding Judge; Kirk, Judge; and Smith, Judge.

**UNPUBLISHED OPINION**

**HUDSON**, Judge

In this probate appeal, appellants challenge the district court's order denying their claim against an estate for satisfaction of a promissory note signed only by the decedent in connection with a mortgage on appellants' home. They argue that they were third-party beneficiaries of the note and therefore entitled to enforce the note against the estate; that any agreement that they pay the mortgage following the decedent's death was not

enforceable based on the credit-agreement statute of frauds; and that they should be indemnified for their payment of the mortgage after her death. We affirm.

## FACTS

In May 1985, decedent Barbara LaPoint executed a will, leaving her estate in three equal shares to her three sons, Darrin, Kevin, and Kurtis.[1] In December 2005, Barbara, Kevin, and Kevin's wife, Monica, as listed mortgagors, executed a $52,000 mortgage to refinance Kevin and Monica's home in Lake Park. At the same time, by warranty deed, Barbara received one-half interest in the property; Kevin and Monica received one-half interest as joint tenants. Barbara alone, however, signed the note relating to the mortgage.

By agreement, during Barbara's life, Kevin paid the mortgage on the property. But after Barbara died in 2012, appellants Kevin and Monica petitioned the district court for a claim against her estate to pay the $46,096 balance remaining on the mortgage, as well as to reimburse them for $11,773 they paid on the note after Barbara's death. They maintained that Barbara, the only named borrower on the note, intended that the balance of the note be paid from her estate on her death. They argued that the mortgage did not personally obligate them to pay the secured sum, that the purpose of the warranty deed was to give the lender security in the home refinanced by the note, and that the lender had required Barbara to become an owner of the property for refinancing purposes. They alleged that Barbara had informed them that she wished to treat all of her sons equally and that paying the balance of the note from her estate would equalize this contribution,

_____

[1] For clarity, the parties are referenced by their first names.

particularly because she had paid for basement remodeling at Kurtis's home, where she lived for several years before her death.

The estate, by respondent Darrin as personal representative, argued in response that Barbara had expected repayment of loans that she made to all three sons and that appellants had produced no evidence to prove that she intended the mortgage payments to be a gift to them. They also argued that appellants' and Barbara's subsequent conduct supported the existence of an equitable mortgage in favor of Barbara's estate.

Without objection, the district court notified the parties that it would be considering the matter on written submissions. After reviewing memoranda and affidavits, the district court issued its order denying appellants' claim. The district court concluded that, because the joint debt of Barbara and appellants benefitted property belonging to appellants, they had no right to contribution from Barbara's estate unless they could establish, by another independent basis, that the balance on the note was part of Barbara's fair share of that obligation. Acting as fact-finder, the district court found that appellants had failed to sustain their burden to show that Barbara made a definite promise to them for purposes of establishing promissory estoppel or an equitable claim for contribution. The district court declined to reach respondent's argument on an equitable mortgage.

Appellants requested reconsideration, arguing that the district court had mischaracterized their petition as seeking contribution, rather than indemnity. The district court denied reconsideration, concluding that, whether the claim was

3

characterized as one for contribution, indemnity, or equitable subrogation, based on the facts previously found, it would reach the same result. This appeal follows.

# D E C I S I O N

A district court exercises its discretion when considering claims made against a decedent's estate. *In re Estate of Hoppke*, 388 N.W.2d 754, 756 (Minn. App. 1986). This court will not overturn the district court's findings on claims against an estate unless, on a review of the entire record, we are "left with a definite and firm conviction that a mistake has been made." *In re Estate of Beecham*, 378 N.W.2d 800, 802 (Minn. 1985). "If there is reasonable evidence to support the district court's findings, we will not disturb them." *Rogers v. Moore*, 603 N.W.2d 650, 656 (Minn. 1999). When a district court's decision is based on equitable considerations, we review that decision for an abuse of discretion. *Krmpotich v. City of Duluth*, 483 N.W.2d 55, 57 (Minn. 1992).

Appellants argue for the first time on appeal that they were entitled to have the debt underlying the mortgage paid by Barbara's estate because they were intended third-party beneficiaries on the note between Barbara and the lender bank. *See Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 833 (Minn. 2012) (providing that it is appropriate to recognize a party's rights as a third-party beneficiary if that party was an intended beneficiary of another's contract under the duty-owed or intent-to-benefit test). They argue that, based on the language of the note and mortgage, the district court should have determined as a matter of law that they had third-party-beneficiary rights.

Generally, this court does not review issues not raised before and considered by the district court. *Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn. 1988). "[O]n rare

4

occasions," we will exercise discretion to allow a party to proceed on a theory not raised before the district court. *Roth v. Weir*, 690 N.W.2d 410, 413 (Minn. App. 2005) (quotation omitted); *see also* Minn. R. Civ. App. P. 103.04 (stating that appellate courts "may" review "any" matter "as the interest of justice may require"). Appellants assert that their argument falls within a "well-established" exception to the general rule, which applies when "the question raised for the first time on appeal is plainly decisive of the entire controversy on its merits and where, as in [cases] involving undisputed facts, there is no possible advantage or disadvantage to either party in not having had a prior ruling by the [district] court on the question." *Roth*, 690 N.W.2d at 413 (quoting *Watson v. United Servs. Auto Ass'n.*, 566 N.W.2d 683, 687–88 (Minn. 1997)). This court is more likely to exercise its discretion to review the issue if it is "a novel issue of first impression," it "was raised prominently in briefing," it was "implicit in or closely akin to the arguments below," and "the issue is not dependent on any new or controverted facts." *Watson*, 566 N.W.2d at 688 (quotations omitted).

We conclude that appellants' third-party beneficiary argument does not meet the requirements for the exception under *Watson*. It does not present a novel issue for this court's review. *See id*. And we reject appellants' contention that the issue could have been determined as a matter of law without reference to disputed facts. The district court first examined the note, warranty deed, and mortgage to discern Barbara's intent relating to the refinancing transaction.[2] *Cf. In re Estate and Trust of Anderson*, 654 N.W.2d 682,

---

[2] When attempting to ascertain Barbara's intent, the district court did not consider the language in her will directing that her executor "pay all [her] legal debts." The

687 (Minn. App. 2002) (construing documents together as part of an estate plan), *review denied* (Minn. Feb. 26, 2003). Because these documents are inconsistent with each other, they are ambiguous, and the district court properly admitted extrinsic evidence to assist in reviewing appellants' claim against the estate. *See In re Estate of Arend*, 373 N.W.2d 338, 342 (Minn. App. 1985) (stating that a document is ambiguous if it suggests more than one reasonable interpretation); *In re Estate of Rock*, 612 N.W.2d 891, 894 (Minn. App. 2000) ("If a writing is ambiguous, . . . extrinsic evidence may be admitted to resolve the ambiguity."). In doing so, the district court considered the parties' numerous affidavits reciting different versions of events, which supported opposing inferences as to Barbara's intent. Therefore, resolution of the matter was dependent on controverted facts, *Watson*, 566 N.W.2d at 688, and this is not the "rare occasion[]" on which we will address an issue not presented to the district court. *Roth*, 690 N.W.2d at 413.

Similarly, we decline to consider appellants' additional argument, also raised for the first time on appeal, that any agreement for them to pay the mortgage following Barbara's death was unenforceable because it did not meet the requirements of the credit agreement statute of frauds. *See* Minn. Stat. § 513.33, subd. 2 (2014) (precluding an action on a credit agreement unless that agreement is in writing, sets forth relevant terms and conditions, and is signed by both parties). Although that issue was raised

Minnesota Supreme Court has held that when used in a will or trust document, the phrase "pay . . . my legal debts" has a "well-understood technical meaning" and "does not authorize a testator's personal representative or executor to pay the testator's secured obligations." *In re Pamela Andreas Stisser Grantor Trust*, 818 N.W.2d 495, 503 (Minn. 2012). We also note that the district court did not consider the issue of Barbara's estate acquiring an interest in the subject property by warranty deed at the time of refinancing. We therefore do not address or comment on this issue. *See Thiele*, 425 N.W.2d at 582.

6

prominently in briefing before this court and does not depend on disputed facts, it does not present an issue of first impression, is not "plainly decisive of the entire controversy on its merits," and was not "implicit in" or "closely akin" to arguments raised before the district court. *Watson*, 566 N.W.2d at 688 (quotations omitted).

Appellants argue that a remand is necessary for the district court to consider these issues and, if necessary, to conduct an evidentiary hearing to elicit testimony on Barbara's intent. But appellants have failed to cite any authority for the proposition that the district court must hold an evidentiary hearing on a claim against a decedent's estate. *See* Minn. Stat. § 524.3-804 (2014) (stating requirements for presentation of claims against a decedent's estate); Minn. Stat. § 524.3-806 (2014) (stating procedure for allowance or disallowance of claim). Appellants neither requested such a hearing nor objected to the district court's procedure of submitting written arguments with supporting affidavits. The district court was not required sua sponte to order an evidentiary hearing.

When documents are ambiguous and the district court relies on extrinsic evidence, we defer to the district court's findings of fact unless they are clearly erroneous. *In re Trust of Hill*, 499 N.W.2d 475, 482 (Minn. App. 1993), *review* denied (Minn. July 15, 1993) (citing Minn. R. Civ. P. 52.01). Here, the district court made extensive findings, including that respondent was more credible than appellants. We decline to disturb the district court's assessment of credibility. *In re Estate of Opsahl*, 448 N.W.2d 96, 102 (Minn. App. 1989). In rejecting appellants' claim, the district court found that it was not clear that Barbara would have understood the loan documents to have the effect of causing her estate to pay off the mortgage balance on her death and that it is more likely

7

that she understood that appellants would continue to make payments on the note to safeguard their equity in their property. In support of its determination, the district court found that the record showed that Barbara did not question the effect of the note, nor did she take other measures such as altering her will, documenting the existence of a gift in writing, or informing all of her children of such an intent. The district court's findings of fact are supported by the record and are not clearly erroneous, and we conclude that the district court did not abuse its discretion by rejecting appellants' claims against Barbara's estate.

## II

Appellants argue that they are entitled to indemnity from Barbara's estate for the payments that they made on the note after her death. The district court's initial order denied their claim of contribution, but did not address indemnity. In denying reconsideration, however, the district court concluded that neither theory would afford appellants relief.

"Contribution is an equitable remedy that allows one who has discharged more than his fair share of a common liability or burden to recover from another who is also liable the proportionate share which the other should pay or bear." *In re Individual 35W Bridge Litig.*, 806 N.W.2d 811, 815 (Minn. 2011) (quotation omitted). Indemnity does not require common liability, but secures a right to reimbursement when one party has discharged the whole of a debt or burden that another party has a duty or liability to pay. *Hendrickson v. Minn. Power & Light Co.*, 258 Minn. 368, 371, 104 N.W.2d 843, 847 (1960), *overruled in part on other grounds by Tolbert v. Gerber Indus. Inc.*, 255 N.W.2d

8

362 (Minn. 1977). Indemnity can arise from a contractual obligation or may be awarded in equity when a party's obligation to indemnify arises from equitable principles. *United Prairie Bank v. Haugen Nutrition & Equip., LLC*, 813 N.W.2d 49, 56 n.2 (Minn. 2012). We afford a deferential standard of review to a district court's balancing of the equities, but review de novo the district court's legal conclusion on whether a claim for equity or contribution fails as a matter of law. *Brown v. Lee*, 859 N.W.2d 836, 839–40 (Minn. App. 2015).

The district court concluded that neither the doctrine of contribution nor indemnity allowed appellants to recover their payments made on the mortgage from Barbara's estate because the mortgage obligation benefitted only their own property. We agree. Appellants presented no contract requiring Barbara or her estate to indemnify them for paying the mortgage. And we have held, on equitable principles, that even though a husband and wife co-signed promissory notes benefitting the husband's business, his estate was liable after his death on all of the notes because they benefitted only his separate property. *See In re Estate of Sjerven*, 370 N.W.2d 66, 69 (Minn. App. 1985) ("It would not be equitable, looking to the underlying facts, to require [the decedent's] estate to share in the legal liability, which benefited only [the survivor's] property"), *review denied* (Minn. Sept. 13, 1985). Appellants argue that, unlike in *Sjerven*, only Barbara signed the promissory note. But that distinction does not negate the district court's application of equity, and the district court did not abuse its discretion by ruling that Barbara's estate had no equitable obligation to indemnify appellants for mortgage payments made on their own property. *See id*.

9

Because we affirm the district court's denial of appellants' claim against Barbara's estate, we need not consider respondent's additional argument that the transaction between appellants and Barbara amounted to an equitable mortgage, which should be satisfied by appellants' immediate payment of the full remaining mortgage obligation to the estate. *See Thiele*, 425 N.W.2d at 582.

**Affirmed.**