**In Re ESTATE OF Teresa Lynn HENRY, Deceased.**

**Nos. C9–87–2269, C5–87–2270.**

Court of Appeals of Minnesota.

June 28, 1988.

Ellen L. Maas, Jeffrey M. Hucek, Minneapolis, for appellant Hagadone Hospitality Corp.

Jay E. Leipham, Van Holston, Burnsville, for appellant Mary Ruth Bergman.

Russell Norum, Wayzata, for respondent.

Heard, considered and decided by CRIPPEN, P.J., and LANSING and SCHULTZ,* JJ.

## OPINION

CRIPPEN, Judge.

Appellants Mary Bergman and Hagadone Hospitality Corporation appeal from the dismissal of their claims against the estate of Teresa Lynn Henry. The trial court concluded both claims were untimely. We reverse as to the claim of Bergman and affirm the dismissal of Hagadone's claim.

## FACTS

On September 21, 1985, cars driven by Teresa Henry and Steven Bergman collided near Coeur d'Alene, Idaho. Henry's car crossed the center line of the state highway and ran head-on into the car driven by Bergman. Both Henry and Bergman died as a result of the accident. Mary Bergman, a passenger in Steven Bergman's car, was seriously injured.

Just prior to the accident, Henry had been drinking in Coeur d'Alene. One of the bars where Henry drank was the lounge at the Coeur d'Alene Holiday Inn. The Holiday Inn is owned by Hagadone Hospitality Corporation.

Although decedent Henry owned property in Priest River, Idaho, she was a Minnesota resident. Since she was a Minnesota resident, formal probate hearings began in Dakota County, Minnesota, on October 1, 1985. Concurrent with the initiation of probate, Shirley Booth, Henry's mother, became administrator of the estate.

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

Notice to creditors was properly published in October 1985 pursuant to Minn.Stat. § 524.3–801 (1984). Under Minn.Stat. § 524.3–803 (1984), Henry's creditors had four months to file certain claims against the estate.

Ancillary probate proceedings began in Idaho on June 30, 1986. The purpose of this action was the disposition of Henry's Idaho property. There is no indication that separate notice to creditors was published for these proceedings.

On August 7, 1986, Mary Bergman, individually and as personal representative of Steven Bergman and Steven Frank Bergman, her son, filed a tort action in Idaho against Henry's estate. The complaint alleged that the accident was caused by Henry's negligence. Bergman also named Hagadone as a co-defendant, alleging dram shop liability.

Henry's personal representative filed a petition for Order of Complete Settlement and Distribution in Minnesota on September 5, 1986, complying with Minn.Stat. § 524.3–1001 (1984). The order was approved one month later. The order to finalize distribution was issued in November 6, 1986. Although funds were distributed, the estate was not closed. The bulk of the estate went to Henry's minor child.

On October 28, 1986, Bergman served Henry's personal representative with a copy of the summons and complaint from the tort action. Bergman filed a claim against Henry's estate on May 7, 1987.

Hagadone submitted a claim against Henry's estate on July 21, 1987. Hagadone's claim is contingent and unliquidated —it seeks contribution and/or indemnification from Henry's estate in the event Hagadone loses the dram shop action.[1]

In August 1987, a hearing was held in Dakota County to determine the disposition of the late claims. The trial court granted Hagadone a temporary restraining order (TRO) preventing closure of the estate.

The TRO stands until a final determination of the claims is made.

In October 1987, the trial court dismissed both claims as untimely. Hagadone and Bergman both appealed. Both appellants now join in challenging the dismissal of their claims against the Henry estate.

## ISSUES

1. Is Bergman's claim valid because the filing time restrictions in Minn.Stat. § 524.3–803 (1984) do not apply to tort claims?

2. Has Hagadone's claim for contribution or indemnity arisen such that the four-month limitation set by the nonclaim statute expired before Hagadone filed its claim on July 21, 1987?

3. If Hagadone's claim is governed by the nonclaim statute and was not filed within the statutory period of four months, should the claim be allowed pursuant to Minn.Stat. § 524.3–803(c) (1984)?

## ANALYSIS

*1. Bergman's Claim.*

The trial court dismissed Mary Bergman's claim as untimely pursuant to the nonclaim statute, Minn.Stat. § 524.3–803 (1984).[2] Subsection (a) of the nonclaim statute governs "claims as defined in section 524.1–201(4)" which arose before decedent died, requiring that these claims be filed within four months after notice to creditors as provided by law. Subsection (b) of the statute governs "claims" which arise at or after decedent's death, "whether due or to become due, absolute or contingent," requiring filing, with exceptions not pertinent here, within four months after the claims arise.

The trial court identified Bergman's claim as a tort claim which arose at the time of decedent's accident in September 1985. Accordingly, the court concluded Bergman had four months from the time of

---

1. The issue of Hagadone's dram shop liability is on appeal to the Idaho Supreme Court. Currently, Idaho does not recognize dram shop liability.

2. Claims not filed in accordance with the statutory requirements of the "nonclaim" statute are forever barred against the estate.

the accident in which to file her claim. Minn.Stat. § 524.3–803(b). Bergman did not formally file a claim until May 7, 1987,[3] and the trial court found the claim untimely and forever barred against the estate.

■ Bergman's claim is a tort claim. Tort claims are expressly excluded from the statutory definition of claims.

(4) "Claims" includes liabilities of the decedent whether arising in contract or otherwise and liabilities of the estate which arise after the death of the decedent including funeral expenses and expenses of administration. *The term does not include* taxes, demands or disputes, regarding title of a decedent to specific assets alleged to be included in the estate, *tort claims,* foreclosure of mechanic's liens, or to actions pursuant to section 573.02.[4]

Minn.Stat. § 524.1–201(4) (1984) (emphasis added).

Supporting the trial court's conclusions, respondent Bergman argues that the claims definition applies only to subsection (a) of Minn.Stat. § 524.3–803 which expressly deals with pre-death "claims as defined in section 524.1–201(4) against a decedent's estate." Since Minn.Stat. § 524.3–803(b) makes no reference to the

claims definition, respondent contends that a common definition of claims is appropriate for that subsection. We disagree with this analysis of the statute.

The introduction to the general definition statute requires a broad application of the claims definition. Minn.Stat. § 524.1–201 (1984). It states that the specified definitions, including the definition of claims, apply

[s]ubject to additional definitions contained in subsequent articles which are applicable to specific articles or parts, and unless the context otherwise requires, in chapter 524 and in chapter 525.

*Id.*

In addition, the exclusion of tort claims from the time requirements of the nonclaim statute is supported by nearly a century of Minnesota law.[5] *See, e.g., In re Iverson's Appeal,* 249 Minn. 156, 81 N.W.2d 701 (1957); *Comstock v. Mathews,* 55 Minn. 111, 56 N.W. 583 (1893); *see also* Minn.Stat. §§ 524.1–201(4) (1986), 525.411 (1971), 8812 (1923), 7323 (1913), 8812 (1923), 4511 (1894); *cf.* Minn.Stat. § 524.1–201(4) (1974) (definition of claims included claims arising in tort).

---

3. Bergman served the personal representative with a summons and complaint in the tort action on October 28, 1986. There is some question as to whether or not the receipt of the summons and complaint constituted notice of Bergman's claim. However, the summons and complaint were also served well after the four-month filing period elapsed.

4. Minn.Stat. § 573.02 (1986) pertains to actions for death by wrongful act.

5. Tort claims were excluded from creditor's filing requirements as early as 1889. *See* Minn. Stat. ch. 46, § 104 (1889). The exclusion has continued to date except for a short period in 1974–75. In 1974, the Minnesota legislature adopted sections 1, 3, 4 and 8 of the Uniform Probate Code (1969). In doing so, it adopted the Uniform Probate Code's definition of claims, which included tort claims. Section 3–803 of the Uniform Probate Code required any claim "founded on contract, *tort* or other legal basis" to be filed within four months after the claim arose. Evidently, the inclusion of tort claims was not challenged. However, when the Uniform Probate Code was adopted, the Minnesota House of Representatives appointed a special subcommittee. The goals of the subcommittee

were to integrate the new language into the existing Minnesota Probate Code and to determine the efficacy of adopting further provisions of the Uniform Probate Code or reverting back to prior Minnesota code provisions. In February 1975, the subcommittee recommended a return to the language excluding torts as claims against the estate. *Adoption and Integration of the Uniform Probate Code, 1975: Hearings on H.F. 216 (S.F. 134) Before House Comm. on Probate and Real Estate by Subcomm. on Uniform Probate Code,* Feb. 3 to Mar. 27, 1975 (John Lindstrom, Chairman, Probate and Real Estate Comm.). The subcommittee noted that the inclusion of torts is "contrary to longstanding practice in Minnesota and a whole line of supreme court decisions." *Id.* On recommendation of the subcommittee, the House voted without debate to again exclude tort claims from the definition of claims and the nonclaim provisions of the Minnesota Probate Code. Subsequently, in March 1975, a bill was passed which reestablished the exclusion of torts as claims against an estate. *See* Minn.Stat. §§ 524.1–201(4) and 524.3–803 (both sections became effective January 1, 1976).

Finally, it is evident the legislature intended that tort claims are not to be considered in the definition of claims. In 1975, a special committee appointed by the Minnesota House of Representatives Committee on Probate and Real Estate reported:

> [T]ort claims are not claims to be filed in probate. * * * Claims are limited, as they now are under our present code, to claims arising under contract * * *. [Pre–1974 Minnesota law] does not cover torts * * * and we feel that these controversies should not be in probate court. * * * Tort claims are not heard by probate court. * * * Persons whose claims are not barred can recover against distributees * * *. The jurisdiction of probate courts exclude tort actions.

*Adoption and Integration of the Uniform Probate Code, 1975: Hearings on H.F. 216 (S.F. 134) Before House Comm. on Probate and Real Estate by Subcomm. on Uniform Probate Code,* February 3, 1975 (John Lindstrom, Chairman, Probate and Real Estate Comm.) [hereinafter UPC Subcomm. 1975]. The same committee, when asked why they recommended the separate exclusion of wrongful death actions under Minn.Stat. § 573.02 (1972 & Supp. 1973), responded:

> The [State] Bar Committee felt quite strongly that [the probate court is] not an appropriate place to try personal injury actions. We added wrongful death to tort exclusion because * * * of a desire to be sure no questions would be raised about it. We have differing statutes of limitation on different kinds of claims, including wrongful death claims, and if we do not eliminate them from probate procedure, then we have the potential of multi-court, multi-party litigation, all which can't be litigated in probate court because of other jurisdictional requirements. Traditionally, we've never litigated [these claims] in a probate court.

UPC Subcomm. 1975 (Feb. 10, 1975).

■ We note that the legislature excluded tort claims for jurisdictional reasons. Because of the time in connection with tort claims, a decedent's estate is only one of several parties, and if tort claims are going to be adjudicated as a claim against an estate, then we have a much more complicated and expensive problem in handling multi-party litigation. The county courts are set up, of course, for jury trial in tort claims, but there are jurisdictional limitations. Again, that's an impediment to treating tort claims as claims against the estate rather than treating them as we historically have—as a nonclaim-type matter.

*Id.* Evidently, tort claims are not excluded for the purpose of extending or enhancing the filing period for such claims. Due to expanded unifications of Minnesota's trial courts, the jurisdictional rationale for excluding tort claims may have disappeared. *See* Minn.Stat. chs. 484 and 487 (1986 & Supp. 1987); *see also* Minn.Stat. § 524.1–302 (1984) (broadly stated probate court jurisdiction). Nevertheless, it is the perogative of the legislature to reevaluate the efficacy of continued exclusion of tort claims. At present, the law is clear. Tort claims are not claims against an estate and are not governed by the nonclaim statute. Minn.Stat. §§ 524.1–201, 524.3–803 (1984). Accordingly, Mary Bergman's claim is not governed by Minn.Stat. § 524.3–803. The claim is timely because it was filed against the estate within the statutory limitation period for the underlying action. Accordingly, we reverse on this trial court determination.

### 2. *Hagadone's Claim.*

a. Is Hagadone's claim governed by Minn.Stat. § 524.3–803?

■ Hagadone's claim is a contingent and unliquidated claim for contribution and/or indemnity. It is an equitable claim and not a tort claim. *See In re Estate of Morse,* 364 N.W.2d 842, 843 (Minn.Ct.App. 1985). It arose sometime after decedent's death. Consequently, the filing period for Hagadone's claim is dictated by Minn.Stat. § 524.3–803(b). In order for Hagadone's claim not to be barred, it must have been filed within four months after it arose.

b.  Did Hagadone's claim for contribution and/or indemnity arise such that the four-month filing period had expired before Hagadone filed on July 21, 1987?

■  Hagadone argues its claim against the estate of Henry is valid because the claim has not yet accrued. Hagadone explains that the statute of limitations for filing its claim does not begin to run

> on the claim of one joint tort-feasor for contribution from another joint tort-feasor until one of the joint tort-feasors has paid more than his fair share of the damages.

*Morse*, 364 N.W.2d at 843 (citations omitted). Hagadone asserts correctly that the claim of a joint tortfeasor does not *accrue* until he has paid more than his fair share. However, there is a definite distinction between the time a claim for contribution or indemnity arises and when it accrues. The nonclaim statute designates the date the claim *arises* as the trigger starting the four-month filing period. Minn.Stat. § 524.3–803(b)(2).

Minn.Stat. § 524.3–803(b) applies to claims when they arise even if they are wholly contingent. Further, the Minnesota Probate Code sets out specific guidelines for honoring contingent claims. *See* Minn. Stat. § 524.3–810 (1984). The thorough manner in which the code deals with contingent and unliquidated claims shows the critical date to be the date on which the claim arose. Minn.Stat. §§ 524.3–803, 524.-3–810. The accrual of the claim affects only the method of settlement. *Id.*

■  For additional reasons explained in the ensuing part of this opinion, we find Hagadone's claim arose at the time Hagadone was named a co-defendant.[6] Although it is not clear from the record, it appears Hagadone received the summons and complaint in October 1986.[7] Hagadone did not file a claim against Henry's estate until July 21, 1987. This is nine months after it knew of the lawsuit. Thus, Hagadone's claim was late. Minn.Stat. § 524.3–803(b)(2).

Hagadone asserts that the test for filing under Minn.Stat. § 524.3–803(b) is the practicality of requiring timely filing considering all facts, and that its claim was unforeseeable until after the four-month period expired.

The Iowa Supreme Court has interpreted its nonclaim statute in light of the practicality of requiring a timely filing.[8] *See Evjen v. Brooks*, 372 N.W.2d 494 (Iowa 1985); *Baldwin v. City of Waterloo*, 372 N.W.2d 486 (Iowa 1985). As stated in *Baldwin:*

> It has been suggested based on a reading of *Nichols v. Harsh*, 202 Iowa 117, 209 N.W. 297 (1926), that the test for determining whether a contingent claim will be barred if not filed under section 633.-410 is the practicality of requiring a timely filing. For example, if the decedent had been a grantor in a warranty deed, it would not be practical to require the filing of a contingent claim by every subsequent grantee on the basis that someday there might be liability. On the other hand, these practical problems do not exist to the same extent in a case where the decedent had guaranteed a note. There, the basis of liability, and the circumstances on which it is based, are readily foreseeable. We agree with this analysis and apply that test here.

*Baldwin*, 327 N.W.2d at 489. Under the test formulated by the Iowa Supreme Court, the

---

**6.**  There is a distinction between the accrual of the right to recover contribution and the inchoate right to contribution before payment or discharge of the common liability. *See Employers Mut. Casualty Co. v. Chicago, St. P.M. & O. Ry. Co.*, 235 Minn. 304, 308, 50 N.W.2d 689, 693 (1950). The inchoate right to contribution arises as soon as the acts of the joint tortfeasors raise the injured persons cause of action against them. *Id.*

**7.**  The record shows that the personal representative of Henry's estate received the summons and complaint on October 30, 1986. It does not specify when Hagadone was served. We base our decision on the apparent fact that Hagadone was served at the same time or earlier.

**8.**  The Iowa Nonclaim Statute is virtually identical to Minn.Stat. § 524.3–803(b) (1984). Iowa Code § 633.410 (1984).

question is not whether the claim has in fact "accrued," or the degree of certainty in the claim, but rather, the test is whether the basis for such a claim against the decedent was "reasonably foreseeable" during the time the claims period remained open. *Evjen*, 372 N.W.2d at 496. Hagadone urges this court to adopt the test outlined by the Iowa Supreme Court to determine whether a contingent claim need be presented under Section 524.3–803(b) (1984). If a contingent claim is not reasonably foreseeable during the claims period, the nonclaim statute should not operate as a bar to recovery.

Although Minnesota has not formally recognized this test, a similar standard is used in a number of early Minnesota Supreme Court decisions. The supreme court has consistently focused on the nature or character of the contingent claim before deciding whether the claim need be presented to avoid consequences of the nonclaim statute. The court has not held that contingent claims automatically fall within the purview of the nonclaim statute. *See, e.g., First Minneapolis Trust Co. v. Fosseen*, 192 Minn. 108, 255 N.W. 816 (1934); *Berryhill v. Peabody*, 72 Minn. 232, 75 N.W. 220 (1898); *Oswald v. Pillsbury*, 61 Minn. 520, 63 N.W. 1072 (1895); *Hantzch v. Massolt*, 61 Minn. 361, 63 N.W. 1069 (1895). Only those contingent claims which could have been presented "in the ordinary course of administration" are governed by it. *Hantzch*, 63 N.W. at 1071; *Berryhill*, 75 N.W. at 221. If the character of the claim is such that it would be impractical to require presentation, the nonclaim statute should not operate as a bar. As illustrated in *Hantzch:*

> [If] construed literally, [the nonclaim statute] would include not only the plaintiff's claim, but all claims of every kind arising upon contract. Its language is "all" claims arising upon contracts, whether the same be due, not due, or contingent * * * If there are no implied exceptions in the statute as to any class of contingent claims, then, if a person dies who was a stockholder in a corporation, or had conveyed land by a warranty deed or signed official bonds as a surety, or given leases for term of years, with covenants to indemnify the leasee against damages by water from the pipes on the demised premises, creditors, obligees and covenantees who would not be forever barred of all right to any redress against his property must hasten to the probate court * * * to press its claims against the estate.

*Hantzch*, 63 N.W. at 1071. *Hantzch* provides support for interpreting Section 524.-3–803(b) (1984) in light of the practicality of requiring a timely filing against the estate. *See also* 1 R. Stein, Stein on Probate, § 6.06 (2d ed. 1987). The concerns raised in *Hantzch* remain present today. If there is no implied exception to the statute, section 524.3–803(b) requires each liquor establishment who may be potentially liable for injuries to "hasten to the probate court" to present claims for contribution, even though they have no knowledge of the automobile accident or the possible existence of liability. It is doubtful the legislature intended such a result.

However, looking at the practicality of filing within the four-month limitation period and considering all factors, we reach a different decision than does Hagadone. We do not believe the legislature intended to unnecessarily extend the filing period for contingent claims of this type. The Hagadone claim was foreseeable and ripe for filing on the day Hagadone was served the summons and complaint. It was on this date that Hagadone became aware of the claim.

It appears Hagadone was served the summons and complaint on or around October 31, 1986. Reasonably, Hagadone should have filed the claim within four months of this date. Hagadone did not file a claim against Henry's estate until July 21, 1987. This was nine months after the claim was foreseeable. Hagadone's claim, as related to the foreseeability test, was filed late. As such, the claim is barred against the estate.

c. Has Hagadone shown cause to allow its late claim pursuant to Minn.Stat. § 524.3–803(c) (1984)?

■ Appellant Hagadone argues that if we find its claim to be untimely, the claim

should still be allowed for cause shown under Minn.Stat. § 524.3–803(c)(3)(ii) (1984). We disagree. According to this provision, the nonclaim statute does not bar "any other claim which would otherwise be barred hereunder upon allowance by the court" if cause is shown and the petition for filing is filed before filing of the petition to settle the estate. *Id.*

 We agree with the trial court's refusal to allow Hagadone's claim. First, Hagadone's claim was presented too late to meet the statutory requirement, and second, Hagadone has not shown sufficient cause. *See id.*

The personal representative of decedent's estate filed a petition for order of complete settlement and distribution on September 5, 1986 pursuant to Minn.Stat. § 524.3–1001 (1986). A hearing on the petition was held and the petition was approved on October 7, 1986. The trial court issued an order closing the estate on November 6, 1986.[9] Hagadone's claim was filed ten months *after* a section 524.3–1001 closing petition was filed. For this reason, Hagadone's reliance on Minn.Stat. § 524.3–803(c)(3) is misplaced.

Even if Hagadone's claim had been filed before the petition for closure, Hagadone has not shown cause to allow its claim such that we should reverse the trial court's decision on the subject. *See* Minn. Stat. § 524.3–803(c)(3)(ii) (1984).

The "for cause shown" requirement is explained by the Minnesota Supreme Court:

> The four-month limitation is directed against dilatory practices which delay the final closing and settlement of an estate in probate. Where no delay is apparent, discretion to allow claims after time limited should be exercised liberally in favor of allowance of claims which are prima facie valid.

*In re Estate of Kucera,* 290 Minn. 501, 504, 186 N.W.2d 538, 540 (1971).

The trial court, exercising its broad discretion, determined that Hagadone has not shown sufficient cause to allow its claim. We will not disturb the trial court's findings unless clearly erroneous. *Estate of Serbus v. Serbus,* 324 N.W.2d 381, 385 (Minn.1982).

There is ample evidence to support the trial court's findings. Hagadone knew of the claim when it was served with the summons and complaint. Although the exact date it received the summons and complaint is unknown, the date appears to be in the latter part of October 1986. If Hagadone had acted diligently and without undue delay, the claim would have been filed by March 1, 1987. The claim was filed on July 21, 1987.

Hagadone has shown no significant reasons for the late filing of its claim. It has not shown hardship, misunderstanding or diligent but mistaken procedures. For these reasons we affirm the decision of the trial court.

### DECISION

We reverse the trial court's dismissal of appellant Bergman's claim and affirm the dismissal of appellant Hagadone's claim.

Affirmed in part and reversed in part.

---

9. Although the order was issued, it was released unsigned due to clerical error. Because the order was not final, appellants were able to obtain a temporary restraining order preventing the closure of the estate. If the order had been signed, the estate would have been closed prior to the filing of Hagadone's claim.