**In re the ESTATE OF Robert P. THOMPSON, Deceased.**

**No. C7-91-2257.**

Court of Appeals of Minnesota.

May 5, 1992.

Brian D. Roverud, Michael D. Johnson, Frundt, Johnson & Roverud, Ltd., Blue Earth, for appellants Anchor Realty & Development, Inc., et al.

John P. Sellner, Prindle, Maland, Sellner, Stennes & Knutsen, Chartered, Montevideo, for respondent Estate of Robert P. Thompson, Deceased.

Considered and decided by LANSING, P.J., and SCHUMACHER and KLAPHAKE, JJ.

## OPINION

LANSING, Judge.

Anchor Realty challenges (1) the trial court's determination that Doris Thompson conducted a reasonably diligent search for creditors under Minn.Stat. § 524.3–801(b)(1) (1990), and (2) the court's refusal to allow a late claim against the estate.

## FACTS

Robert Thompson died in August 1989. Doris Thompson, appointed personal representative in October 1989, performed a

search for creditors pursuant to Minn.Stat. § 524.3–801(b)(1), but did not uncover a contractual liability for the financing of commercial real estate in Blue Earth, Minnesota. The Blue Earth property was purchased by Robert Thompson, Albert Van Buren, Marlin Schoep, and Midwest 10, Inc. from Anchor Realty and Development in 1977. The purchase was financed with a contract for deed payable to Charles Pingry, one of three partners in Anchor, and the assumption of an existing mortgage with Midwest Federal.

Between 1978 and 1984, Thompson, Van Buren, and Schoep assigned the contract for deed to Midwest 10, Inc., who then assigned it to DARB Investors. Thompson was involved in both Midwest 10 and DARB, and remained in contact with Pingry about the property. However, in 1984, Thompson's business and social relationship with Van Buren ended, and the partners apparently entered an agreement in which Van Buren got the Blue Earth property. Pingry had no further contact with Thompson about the property, but did communicate with Van Buren.

The property encountered financial difficulties in the late 1980s and payment to Pingry on the contract for deed ceased in 1988. In January 1990, the holder of the primary mortgage, now Minnesota Federal, served Pingry with a summons and complaint to begin foreclosure proceedings on the property. Pingry was in contact with Van Buren about the foreclosure, but did not try to contact Thompson. Pingry did not see the notice to creditors of Thompson's probate proceedings published in October 1989. In the spring of 1990, some months after the bank initiated foreclosure proceedings, Pingry discovered that Thompson had died.

In June of 1990, Anchor filed a written statement of claim against Thompson's estate for the balance of the contract for deed and for any deficiency judgment due on the primary mortgage after the foreclosure sale. The Estate disallowed the claim because the statutory time for filing a claim had expired in January 1990, four months after the publication of notice to creditors. In September the property was sold at a foreclosure sale, leaving a deficiency in the amount of $23,000.

Anchor filed a petition to proceed on the claim in August 1990. Anchor contended that Doris Thompson had not performed a "reasonably diligent search for creditors" as required by Minn.Stat. § 524.3–801(b)(1), but that if the search was found adequate, the court should still allow the claim for cause shown pursuant to Minn.Stat. § 524.3–803(c)(4)(ii). The trial court determined that Doris Thompson had performed a reasonably diligent search for creditors, and that Anchor had not shown good cause why the late claim should be allowed. Following denial of a motion for a new trial or amended findings, Anchor appeals.

## ISSUES

1. Did the personal representative conduct a reasonably diligent search for creditors under Minn.Stat. § 524.3–801(b)(1)?

2. Did the trial court abuse its discretion in disallowing the late claim against the estate under Minn.Stat. § 524.3–803(c)(4)(ii)?

## ANALYSIS

### I

The Due Process Clause of the United States Constitution requires the personal representative of an estate to provide actual notice of probate proceedings to known or reasonably ascertainable creditors. *Tulsa Professional Collection Servs., Inc. v. Pope*, 485 U.S. 478, 489–90, 108 S.Ct. 1340, 1347, 99 L.Ed.2d 565 (1988). Consistent with that requirement, the Minnesota probate statute provides that within three months of publication of notice of probate proceedings, the personal representative must serve notice upon all known and identified creditors. Minn.Stat. § 524.3–801(b)(2). Further, the personal representative

> may determine, in the personal representative's discretion, that it is or is not advisable to conduct a reasonably diligent search for creditors of the decedent who are either not known or not identi-

fied. If the personal representative determines that a reasonably diligent search is advisable, the personal representative shall conduct the search. Minn.Stat. § 524.3–801(b)(1). Any creditors discovered in the search must then be served with notice. Minn.Stat. § 524.3–801(c).

■ Due process does not require "impracticable and extended searches." *Pope*, 485 U.S. at 490, 108 S.Ct. at 1347 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 317–18, 70 S.Ct. 652, 658–59, 94 L.Ed. 865 (1950)). Rather, the personal representative must make "reasonably diligent efforts." *Id.* (quoting *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798 n. 4, 103 S.Ct. 2706, 2711 n. 4, 77 L.Ed.2d 180 (1983)). No Minnesota case law has defined the scope of a "reasonably diligent search" for creditors. *See generally* Thomas L. Waterbury, *Notice to Decedents' Creditors*, 73 Minn.L.Rev. 763 (1989).

■ If a reasonably diligent search for ascertainable creditors is interpreted to require an extensive search, the timely and efficient administration of estates will be impaired, while few additional creditors will be discovered. *Id.* at 782. A statute giving the personal representative discretion on whether to search suggests a corresponding duty to avoid an abuse of that discretion. *Id.* Thus, the personal representative must act with good faith and from proper motives, and within the bounds of reasonable judgment. *Id.* at 782–83 n. 97 (citing III A. Scott, *The Law of Trusts*, § 187, at 14–15 (4th ed. 1988)).

■ Doris Thompson retrieved her husband's records from his secretary and his attorney. She reviewed the records of stores currently owned by herself and her husband, talked to his business associates, the board of directors of his company, and the partners and shareholders in his current business transactions. She paid off or served the required notice on all creditors she knew about or discovered. Nowhere in her search did Thompson encounter information about the contract for deed or mortgage.

Anchor contends that Thompson's search was not reasonably diligent because she did not speak with all the employees of the stores owned by her husband or with all former business associates, and because the law firm that represented the Thompsons examined only files kept under Robert Thompson's name and not files kept under the names of businesses in which Thompson was involved. Information about the contract for deed was contained in the files of Midwest 10, Inc. and DARB Investors, but in a branch office of the firm.

Robert Thompson was involved in numerous business transactions over the course of many years. To require his personal representative to determine the status of every past business transaction and contact all past associates approaches the "extended search" that *Tulsa* rejects. Doris Thompson pursued all current, potentially productive sources of information known to her. She exercised her discretion and acted in good faith.

The trial court applied the statutory language to essentially undisputed facts, therefore, its conclusion was one of law and does not bind this court. *A.J. Chromy Constr. Co. v. Commercial Mechanical Servs., Inc.*, 260 N.W.2d 579, 582 (Minn. 1977). We agree with the trial court, however, that Doris Thompson's search was reasonably diligent.

## II

■ A court may allow a claim to be filed against an estate after expiration of the statutory filing time if the creditor can show good cause. Minn.Stat. § 524.3–803(c)(4)(ii). The trial court has broad discretion to determine whether good cause exists, and its finding will not be disturbed unless clearly erroneous. *In re Estate of Henry*, 426 N.W.2d 451, 459 (Minn.App. 1988).

■ The Minnesota Supreme Court has said in dicta that the filing limitation "is directed against dilatory practices which might delay the final closing and settlement of an estate." *In re Estate of Kucera*, 290 Minn. 501, 504, 186 N.W.2d 538,

540 (1971). The court explained, however, that probate courts should not sanction "unexplained and inexcusable lack of diligence on the part of claimants." *Id.* This court has identified hardship, misunderstanding, and diligent but mistaken procedures as reasons for granting a petition to file a late claim. *Henry,* 426 N.W.2d at 459.

The trial court denied Anchor's petition to file a late claim because although Anchor did not delay filing a claim once it discovered Robert Thompson was deceased, it had done little to protect itself up to that time. Payments ceased on the contract for deed in October 1988, and before that no payment had been made since April 1988. Robert Thompson died in August 1989. Anchor received notice of foreclosure of the primary mortgage in January of 1990. Pingry was in contact with Van Buren during this time and discussed the financial difficulties, but apparently did not inquire about the status of the other purchasers, and did not try to contact Thompson. Under these facts, denial of the petition was not an abuse of discretion.

## DECISION

Doris Thompson conducted a reasonably diligent search for creditors under the statute. The trial court did not abuse its discretion in refusing to allow the late claim.

Affirmed.